NORFOLK AND WESTERN RAILWAY COMPANY, Plaintiff,

v.

UNITED STATES of America, and Interstate Commerce Commission, Defendants,

and

Illinois Commerce Commission, Public of the State of Indiana, Michigan Public Service Commission, Missouri Public Service Commission, City of Fort Wayne, City of Adrian, Sisters of St. Dominic Motherhouse,

and

United Transportation Union, Intervening Defendants.

No. 69 C 378.

United States District Court, E. D. Missouri, E. D.

July 2, 1970.

Ray T. Sample and Richard A. Keeney, St. Louis, Mo., and Sidley & Austin, Howard J. Trienens, George L. Saunders, Jr., Theodore N. Miller, Chicago, Ill., for plaintiff.

Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., Richard W. McLaren, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant United States.

Robert W. Ginanne, General Counsel, and Pyilip W. Getts, Atty., I. C. C., Washington, D. C., for defendant I. C. C.

James T. Williamson, St. Louis, Mo., for intervening defendants.

Wm. J. Scott, Atty. Gen., State of Ill., Springfield, Ill., Peter A. Fasseas, Asst. Atty. Gen., Chicago, Ill., for Illinois Commerce Commission.

Carl E. VanDorn, Public Counsellor, State of Ind., for Public of State of Indiana.

Walter V. Kron, Asst. Atty. Gen., David P. VanNote, Asst. Atty. Gen.,

State of Mich., Lansing, Mich., for Michigan Public Service Commission.

Jeremiah D. Finnegan, Gen. Counsel, Mo. Public Service Commission, Jefferson City, Mo., for Missouri Public Service Commission.

J. Robert Arnold, Fort Wayne, Ind., for City of Fort Wayne.

Major Bird, Adrian, Mich., for City of Adrian.

James T. Williamson, St. Louis, Mo., Gordon P. MacDougall, Washington, D. C., for United Transportation Union.

Before MATTHES, Circuit Judge, and MEREDITH and REGAN, District Judges.

## MEMORANDUM OPINION

REGAN, District Judge.

This is an action to review and set aside an order of the Interstate Commerce Commission which required Norfolk and Western Railway Company (N & W) to continue the operation of its passenger trains Nos. 301 and 304 (the "Wabash Cannonball") between St. Louis and Detroit for one year following the date of the order issued June 26, 1969. The Commission's decision is reported in Norfolk & Western Railway Co. Discontinuance of Trains Nos. 301 and 304, 334 I.C.C. 506.

Norfolk and Western duly filed notice of its discontinuance of trains Nos. 301 and 304 pursuant to Section 13a(1) of the Interstate Commerce Commission Act, as amended (49 U.S.C. § 13a(1)). Objections to the proposed discontinuance having been made, the Commission instituted an investigation thereof and ordered the trains continued for the maximum period of four months. Hearings were held at St. Louis, Missouri, Decatur and Danville, Illinois, Lafayette, Peru and Ft. Wayne, Indiana, and Detroit, Michigan, following which the Commission found that the public convenience and necessity required the continued operation of the trains and that the continued operation of the trains would not create an undue burden on in-terstate commerce, and entered the order complained of. A timely petition for reconsideration was denied and this suit followed.

"Section 13a in its present form came into the (Interstate Commerce Commission) Act in 1958 and was designed to supersede the prior confused and time-consuming procedure under which the States supervised the discontinuance of passenger trains. Accordingly, Congress provided a uniform federal scheme to take the place of the former procedure. A *single federal standard* was to govern train discontinuances whether interstate or intrastate, though the *procedure* of § 13a(1) for discontinuance of an interstate train was made somewhat different from the procedure for discontinuance of intrastate trains. But the Commission to have the final say in each case and 'precisely the same substantive standard' now governs discontinuance of either interstate or intrastate operations. Southern R. Co. v. North Carolina, 376 U.S. 93, 103, 84 S.Ct. 564, 570, 11 L.Ed.2d 541." City of Chicago v. United States, 396 U.S. 162, 164–165, 90 S.Ct. 309, 311, 24 L.Ed.2d 340.

The "Wabash Cannonball" provides the only direct railway passenger service between St. Louis and Detroit. All other rail routes are very circuitous. So, too, there is no existing bus service which parallels the Cannonball route, many of the intermediate points are not located on any bus route, and others have but limited bus service with infrequent schedules.

The Commission found that the use of the trains had declined to a total in 1968 of 58,538 revenue passengers, the average number of passengers per trip per day that year being 83.4 for train No. 301 and 76.6 for train No. 304. The heaviest patronage is during the months of June, July and August. St. Louis and Detroit originate over one-third of the passengers utilizing the trains. Of the total passengers, over one-half travel over, between, to or from either Detroit or St. Louis, the remainder traveling

shorter trips between intermediate stations. In 1968, N & W had a net income after fixed charges and other deductions of $74,141,388, an increase of some $1,500,000 over its 1967 net income. The railroad's total system passenger deficit for 1968 was $13,158,875. Addressing itself to the evidence of N & W that the 1968 net losses from the operations of the Cannonball was $576,466, the Commission found that some of the "savable expenses" (that is, those expenses which would cease with the discontinuance of the trains) were overstated by approximately $64,000, reducing the claimed losses to $512,772. The corresponding impact of increased federal income taxes resulting from these deductible expense items would further reduce its loss from the operation of the trains to $377,400.

Section 13a authorizes the Commission to order the continuance of the operation of the train "for a period not to exceed one year from the date of such order" upon a finding, after hearing, that the operation of such train "is required by public convenience and necessity and will not unduly burden interstate * * * commerce." In this case, the required findings were made and the order based thereon was limited to a period of one year.

■ Judicial review of an I.C.C. order is very limited. Our function is to determine whether the ultimate findings of the Commission are supported by substantial evidence on the whole record and do not involve an error of law. Once it is found that the Commission's findings are supported by substantial evidence and that in arriving at its determination the Commission did not depart from the applicable rules of law, that is the end of the matter. On the other hand, the Commission's order must be reversed if in arriving at its determination the Commission failed to follow the applicable law or if its findings are arbitrary and capricious and have no basis on the record as a whole. Truck Transport, Inc. v. United States, D.C. Mo., 300 F.Supp. 159, 161. "Substantial evidence need not necessarily be a pre-

ponderance of evidence. It is sufficient if it is that degree of evidence which would justify, if the trial were to a jury, the refusal to direct the verdict when the conclusion to be drawn is one of fact for a jury." Garrett Freightlines, Inc. v. United States, D.C.Idaho, 307 F.Supp. 1245, 1247. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

N & W argues that the Commission's finding of public need is not supported by substantial evidence but on the contrary has resulted from its "arbitrary rejection" of a marketing survey made at the railroad's instance by Arthur D. Little, Inc. which was based upon a sampling survey of passengers riding the trains during the two-week period commencing February 15, 1969, and an analysis of the community served by the trains. The railroad's theory of "arbitrary rejection" is premised on the fact that the study was not in terms discussed in the Commission's report. In our view, failure to specifically refer to the evidence may not be equated with a failure to consider it.

■ We are aware of no requirement in the law—and N & W cited us to no authority which mandates the Commission to specifically refer to and state in its report the weight it accorded to the testimony of each witness, even if that testimony is "expert" or is deemed by a party to be of major significance. The courts have consistently held that the Commission need not specify the weight given to any item of evidence or disclose the mental operations by which its decisions are reached. Yourga v. United States, D.C.Pa., 191 F.Supp. 373, 375; Curtis, Inc. v. United States, D.C.Colo., 225 F.Supp. 894, 902; Lake Shore Motor Freight Company v. United States, D.C.Ohio, 310 F.Supp. 957, 961. The Commission's discussion concluded with the statement that "Contentions of the parties as to fact or law not specifically discussed herein have nevertheless been given consideration and found to be without merit or material significance." We also note that in its order denying

the petition for reconsideration, which specifically called attention to the Little study, the Commission noted that the petition for reconsideration presented nothing that had not already been considered in the initial report.

The two cases cited by N & W are clearly distinguishable both on the facts and the law. Davis & Randall, Inc. v. United States, D.C.N.Y., 219 F.Supp. 673, involved a proposal for reduced rates, initially protested by competitors, which was handled under the Commission's modified procedure. The proponent submitted written statements of experts with accompanying supporting exhibits demonstrating that the rates were reasonably compensatory. Thereupon the protestants withdrew from the case, so that no other evidence was in the record. In that situation and under the circumstances discussed at length in the opinion, the Court held that the Commission's failure to accord the carrier an evidentiary hearing at which the Commission's criticism of the expert's conclusions could have been developed and subjected to cross-examination and rebuttal was inherently unfair, and for such reason the matter was remanded for further proceedings. In the other case, Ringsby Truck Lines, Inc. v. United States, D.C.Colo., 263 F.Supp. 552, involving a rate increase proposal, the adverse decision of the Commission was based on its specific rejection of expert testimony relating to cost studies, with "absolutely no countervailing evidence" and without a finding that the expert witness has been disbelieved. The Court noted that in the past the Commission had accepted similar studies, so that it appeared on the face of the record that the Commission had changed its required standard of proof without notice to the carriers as to the standards it was now applying or the type of data it presently required. The matter was remanded to the Commission, not because the study had not been accepted (since "the Commission is the sole judge of the weight of the evidence before it") but because dictates of fundamental fairness required the Commission to "articulate any rational connection between the facts found and the choice made."

In the present proceeding, it was unnecessary for the Commission to advert to what it could well have deemed inadequacies or deficiencies of the Little study, there being "countervailing evidence" on which it could have found the facts and made its choice. In essence, the railroad's argument relates to the weight of the evidence, a matter committed solely to the discretion of the Commission.

Nor is it true, as the railroad contends, that the Commission's finding was based on the "intensity of the public opposition" rather than on the evidence of record, a proposition which is repeated in one form or another at least 19 times in the railroad's briefs. What the Commission's report actually said, in the course of its discussion, was that "(t)he record herein is convincing that the Cannonball meets a necessary and continuing public need. This was amply demonstrated by the intense interest manifested by the public witnessses *and by their evidence introduced into this record.* It is also exhibited by the fact that a very substantial number of passengers still patronize the trains." 334 I.C.C. at 522. In the context of the foregoing, the expression "intense interest manifested by the public witnesses" has obvious reference to the sincerity of the witnesses and their concern for the public good, factors bearing upon the *weight* to be attached to the evidence introduced by them.

N & W next attacks the Commission's finding that the continued operations of the trains will not constitute an undue burden on interstate commerce. It argues that the Commission interpreted Section 13a(1) as foreclosing "a profit-making carrier from discontinuing a losing passenger service, no

matter how great the loss, so long as those losses did not threaten the carrier with insolvency." We do not so read the decision. In arriving at its ultimate conclusion, the Commission took into account, among other factors, evidence that the carrier had earned in 1968, a net profit in excess of 74 million dollars, and that the discontinuance of the trains would result in a net saving of $377,400.

All parties agree (quoting from N & W's brief) that "Section 13a(1) requires that the Commission determine the public need for these trains and weigh that need against the burden which the trains' losses impose upon commerce." Obviously, the ability of a carrier to absorb a loss is a relevant consideration, as the railroad's brief expressly concedes, although this is not a controlling factor. As the Supreme Court held in Southern Railway Co. v. North Carolina, 376 U.S. 93, 103, footnote 16, 84 S.Ct. 564, 570, 11 L.Ed.2d 541, "Thus, consideration of the overall prosperity of the carrier is necessarily relevant to a determination of the degree to which a deficit resulting from a given service constitutes an undue burden on interstate commerce." The Commission carefully weighed all pertinent factors and concluded upon the record as a whole that interstate commerce would not be unduly burdened by denying the request of the carrier to affect a net saving of $377,400. This finding is supported by substantial evidence.

Parenthetically, we note that intervening defendants have adverted to the fact that the present proceeding is the first instance a railroad has ever sought judicial review of a Commission decision denying an interstate passenger train discontinuance.[1] The reason is fairly obvious. When a railroad prevails in a Section 13a proceeding, the discontinuance is permanent. So, that unless the Commission's order is set aside the protestants are deprived of the passenger service for all time irrespective of any subsequent change in conditions. On the other hand, because of the very limited period during which the Commission's order is effective, the possibility of irreparable damage to the railroad is extremely remote, and during that period the railroad can review the situation as it relates to the public need and convenience and the burden on commerce, and if the facts warrant again seek discontinuance. In fact, this is the second attempt to discontinue the Cannonball, the first being reported as Norfolk & W. Ry. Co. Discontinuance—St. Louis & Chicago, 331 I.C.C. 415.

Finally, the railroad urges that the Commission failed to make sufficient and adequate findings with respect to the National Transportation Policy, its theory being that such policy necessitates the discontinuance of the Cannonball because "of the inherent cost advantage of bus transportation." The National Transportation Policy (49 U.S. C., preceding Section 1) declares the policy of the Congress with respect to the development, coordination and preservation of a transportation system "adequate to meet the needs of the commerce of the United States * * *", and declares that the provisions of the Interstate Commerce Commission Act shall be administered and enforced with the view to carrying out the declaration of policy. One of the considerations is that the Act be so administered as to recognize and preserve the inherent advantages of each mode of transportation. This is, of course, only one of the considerations to be taken into account. The Commission's report clearly demonstrates its

1. However, a successful court challenge to a Commission order denying discontinuance of intrastate passenger trains was recently made in Chicago & Eastern Illinois Railroad Company v. United States, D.C.Ill., 308 F.Supp. 645. The right of the carrier to seek review of the order in the present case cannot, of course, be questioned. See City of Chicago v. United States, 396 U.S. 162, 164, 90 S.Ct. 309, 24 L.Ed.2d 340.

awareness of the "inherent cost advantages" of bus transportation, but other considerations militated against the conclusion that the trains be discontinued for that reason.

"Inherent in the meaning of the term 'public interest and convenience' is the national policy declared by the Congress of developing and maintaining a strong and healthy interstate transportation system." Carolina Freight Carriers Corporation v. United States, D.C.N.C., 307 F.Supp. 723, 731. "In practice, the public interest standard and the National Transportation Policy are coterminous." Acme Fast Freight, Inc. v. United States, D.C.Del., 281 F.Supp. 314, 319. In this area, the expertise of the Commission in assessing the public interest is entitled to great deference. The courts have consistently held that the Commission is not required to make specific reference to the National Transportation Policy, it being sufficient that the basis of the decision is stated with sufficient clarity to enable the reviewing court to determine whether such policy is being followed. See Braswell Motor Freight Lines, Inc. v. United States, D. C.Tex., 271 F.Supp. 906, 912; Roadway Express, Inc. v. United States, D.C.Del., 213 F.Supp. 868, 877, affirmed 375 U.S. 12, 84 S.Ct. 53, 11 L.Ed.2d 38; Luckenbach S. S. Co. v. United States, D.C.N.Y., 122 F.Supp. 824; and T. S. C. Motor Freight Lines, Inc. v. United States, D. C.Tex., 186 F.Supp. 777, 794, affirmed Herrin Transportation Co. v. United States, 366 U.S. 419, 81 S.Ct. 1356, 6 L. Ed.2d 387.

We hold that there is substantial evidence on the whole record to support the Commission's decision requiring the continuance of the train for the period of one year after the date of the order and discontinuing the investigation, that the findings based on such evidence are adequate, and that the decision is neither arbitrary nor capricious and is in accord with the applicable law. Accordingly, judgment will be entered affirming the order of the Commission and dismissing the complaint.