**BEAUFORT TRANSFER COMPANY and Oscar Duncan, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Dodds Truck Lines, Inc., Highway Transportation Co., Inc., and Main Line Hauling Co., Inc., Intervening Defendants.**

**No. 69 C 351.**

United States District Court, E. D. Missouri, E. D.

Feb. 8, 1971.

Thomas F. Kilroy, Arlington, Va., and Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for plaintiffs.

John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., Nahum Litt, Office of the Gen. Counsel, I. C. C., Washington, D. C., for the United States and I. C. C.

Frank W. Taylor, Jr., Kansas City, Mo., and Donald U. Beimdiek, St. Louis, Mo., for intervening defendants.

Before MATTHES, Circuit Judge, and MEREDITH and REGAN, District Judges.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

This action was brought to set aside certain orders of the Interstate Commerce Commission (Commission) entered in related proceedings in its Docket No. MC–F–9556, Beaufort Transfer Co.—Purchase (Portion), Docket No. MC–22285, Oscar Ducan—Petition to Reconsider "Grandfather" Certificate, and Docket No. MC–22285, Sub. No. 1, Oscar Duncan Extension—International Stock Yards, Ill.

By a joint application filed October 14, 1966 (No. MC–F–9566) Beaufort Transfer Company (Beaufort) sought authority to purchase the interstate operating rights of Oscar Duncan (Duncan) except the rights to transport household goods, between Rolla, Missouri, and all points within 15 miles of Rolla and certain points in Illinois, as well as Duncan's Missouri intrastate operations except his intrastate rights to transport household goods. On application filed under Section 210a(b), (49 U. S.C. § 310a(b)), the Commission, on October 28, 1966, granted Beaufort temporary authority to operate the aforesaid

rights of Duncan, and Beaufort has been operating said rights ever since.[1]

Duncan's certificate by its terms authorized transportation as follows:

"Between Vichy, Mo., and International Stock Yards, Ill., as follows:

*General commodities*, except articles of unusual value, and except dangerous explosives, household goods, as defined in *Practices of Motor Common Carriers of Household Goods*, 17 M.C. C. 467, commodities in bulk, commodities requiring special equipment and those injurious or contaminating to other lading,

From Vichy over U.S. Highway 63 to Rolla, Mo., thence over U.S. Highway 66 to International Stock Yards; and

*Fertilizer, mill feed*, and *roofing*,

From International Stock Yards over the above specified route to Vichy.

Service is authorized to and from intermediate points of Rolla, St. James, Knobeview, Fanning, Cuba, and St. Louis, Mo., and East St. Louis, Ill., and off-route points within 20 miles of Rolla."

Prior to the institution of the proceedings before the Commission, its Director of the Bureau of Operations and Compliance had expressed the informal opinion that Duncan's certificate granted general commodity authority only one way (eastbound) from points in Missouri to International Stock Yards, Ill., (within the St. Louis-East St. Louis Commercial Zone). Although Duncan disagreed with this interpretation he then filed a petition in Docket No. 22285, pursuant to the "grandfather" clause of Section 206(a) of the Act (49 U.S.C. § 306(a)) to modify his certificate so as to permit the transportation of general commodities westbound from St. Louis to certificated points in Missouri in addition to Rolla. He also filed an application (Docket No. MC–22285 Sub. No. 1) for authority to transport general commodities westbound from International Stock Yards, Illinois to Vichy, Missouri, serving Rolla and other designated intermediate points and points within 20 miles of Rolla as off-route points. The purpose of the latter application was to obtain the requested authority in the event the Commission interpreted the original certificate as authorizing eastbound movements only and also refused to modify that certificate.

The hearing officer recommended (1) that the petition seeking "grandfather" modification of the Duncan certificate be denied, (2) that new authority for westbound operations from St. Louis be granted only to Rolla, Missouri, with no service to intermediate or off-route points, and (3) that the purchase application be approved, subject, however, to the interpretation of the certificate which would limit westbound movements. A Review Board affirmed and adopted the recommended order of the hearing examiner, and thereafter the Commission, Division 3, Acting as an Appellate Division, affirmed said order.

As we noted in Norfolk & Western Railway Co. v. United States, D.C.Mo., 316 F.Supp. 1396, 1399,

"Judicial review of an I.C.C. order is very limited. Our function is to determine whether the ultimate findings of the Commission are supported by substantial evidence on the whole record and do not involve an error of law. Once it is found that the Commission's findings are supported by substantial evidence and that in arriving at its determination the Commission did not depart from the applicable rules of law, that is the end of the matter. On the other hand, the Commission's order must be reversed if in arriving at its determination the Com-

---

1. Actually, Beaufort has operated Duncan's right since February 16, 1965, pursuant to the Commission's order in an earlier application which was subsequently denied on the ground Beaufort had not made available for examination by protestants certain documents. The present temporary authority was granted 3 days before the former authority expired.

mission failed to follow the applicable law or if its findings are arbitrary and capricious and have no basis on the record as a whole. Truck Transport, Inc. v. United States, D.C.Mo., 300 F.Supp. 159, 161. 'Substantial evidence need not necessarily be a preponderance of evidence. It is sufficient if it is that degree of evidence which would justify, if the trial were to a jury, the refusal to direct the verdict when the conclusion to be drawn is one of fact for a jury.' "

Plaintiffs contend that the Commission acted arbitrarily and capriciously and outside the scope of the applicable statutes (1) in interpreting the "grandfather" certificate as authorizing only eastbound general commodities operation, (2) in refusing to modify the certificate under the "grandfather" clause to permit westbound shipments from St. Louis even if the Commission's interpretation of the certificate as granted is correct, and (3) in finding that the general commodity regular-route operations of Duncan except as between Rolla and St. Louis are dormant.

■ We first consider the Commission's interpretation of the Duncan certificate. That certificate, insofar as it granted general commodity authority, explicitly states that such authority is *from* Vichy to International Stock Yards. The certificate also granted specific commodity (fertilizer, mill feed and roofing) authority from International Stock Yards to Vichy, and authorized service to and from certain named intermediate points. Under the Commission's interpretation of the language employed, the certificate does not authorize general commodity westbound authority. It reasoned, inter alia, that each of the specifically mentioned commodities (fertilizer, mill feed and roofing) is actually embraced within the term "general commodity," and that the Commission would

not have granted authority to transport these specific commodities westbound if it had already done so in the preceding paragraph, thus making the grant of specific authority superfluous.

■ "The interpretation of a certificate issued by the ICC is properly with the ICC and not the courts." Heavy Specialized Carriers Conference v. United States, D.C.Mo., 231 F.Supp. 968, 970. We are bound by the interpretation the Commission places upon a certificate it issues unless such interpretation is capricious or arbitrary and constitutes an abuse of discretion or departs from established legal standards. Jenkins Truck Lines, Inc. v. United States, D.C. Minn., 318 F.Supp. 207. See also Burlington-Chicago Cartage, Inc. v. United States, D.C.Ill., 178 F.Supp. 857, and E. B. Law and Son, Inc. v. United States, D.C.N.Mex., 247 F.Supp. 846, 848. In our judgment, although it is possible to interpret the certificate otherwise,[2] the interpretation of the Commission is a reasonable one and neither capricious nor arbitrary.

■ We also find no abuse of discretion in the refusal of the Commission to reopen and modify the "grandfather" certificate. The Commission found, and plaintiffs agree, that the certificate is not ambiguous. And the Commission further found, in analyzing the material available, that the Commission had not in fact originally intended to grant general commodity authority other than for eastbound movements.

The final issue determined by the Commission is whether the original grant of authority should be changed to confer the rights requested by the plaintiffs. The theory of plaintiffs is that Duncan and his father at all times acted under the belief that the certificate as granted permitted two-way general commodity shipments and that acting under such belief, the certificate holder had in

2. Plaintiff emphasizes the use of the word "between" in the introductory portion of the certificate, but we do not believe this necessarily mandates a finding of unrestricted "from and to" authority in the context of the language of the certificate as a whole.

fact engaged in westbound general commodity operations without complaint by competitors or the Commission. Much of the evidence offered in support of this theory was parol and of a generalized nature lacking in specifics except as to shipments from St. Louis to Rolla. However, the Commission did not ignore plaintiffs' parol evidence, but found it unpersuasive in the absence of pre-1961 documentary substantiation [3] and the nature and extent of Duncan's operations after January 1, 1961. Duncan's records for the period from 1961 to 1964 show that virtually all of his westbound shipments during that period involved the terminal points of Rolla and St. Louis.

 The hearing examiner carefully analyzed the evidence respecting the aforesaid operations of Duncan under color of right, accorded proper consideration thereto, and on the basis thereof reasonably found that except between Rolla and St. Louis, (1) Duncan's activities "to or from any of the authorized intermediate points, the terminal points of International Stock Yards and Vichy and the off-route points 20 miles from Rolla have been so infrequent and the number of shipments so sparse as to be of no consequence," and to lead to the conclusion that "a dormancy has occurred," and (2) the public convenience and necessity did not require the grant of a new competitive service. He found, however, that Duncan's operations, under unchallenged color of right, had demonstrated a public need for his transportation service in the movement of general commodities by regular route from St. Louis to Rolla and that his operating rights, as interpreted by the Commission, shall be extended to include such service.

The burden was upon plaintiffs in the purchase application to show that the rights involved were not dormant and that a new competitive service would not in fact be created. Consolidated Copperstate Lines v. United States, D.C.Cal., 293 F.Supp. 858, 861. The ultimate effect of the Commission's order was to deny Beaufort the right to purchase those claimed "rights" of Duncan which were dormant and thus legally non-existent. The Commission's findings of dormancy and the absence of a public need for the westbound service are supported by substantial evidence and are neither arbitrary nor capricious.

We hold that plaintiffs have failed to demonstrate that the decision of the Commission is arbitrary or capricious or not in accord with applicable law. Accordingly, it is hereby ordered that the complaint be and the same is hereby dismissed.

3. The pertinent pre-1961 documentary records were said to have been destroyed by Duncan during the winter of 1966, almost two years after Beaufort, in a prior proceeding later abandoned, sought and was granted temporary authority to operate Duncan's rights and several months after the instant purchase application was filed. The "explanation" that Duncan ordered the documents destroyed because of lack of space is not a very satisfactory one in light of their importance in resolving the issue in the then pending proceeding.