**FOOD CHEMICAL NEWS, INC.,**
**Plaintiff,**

v.

**Rex D. DAVIS, Director, Bureau of Alcohol, Tobacco and Firearms Department of the Treasury, Washington, D. C., Defendant.**

**Civ. A. No. 74-215.**

United States District Court,
District of Columbia.
June 28, 1974.

Ronald L. Plesser, Alan B. Morrison, Washington, D. C., for plaintiff.

Robert M. Werdig, Asst. U. S. Atty., for defendant.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

■ The issue before this Court is whether the two separate "informal" meetings with consumer and distilled spirits industry representatives relative to drafting proposed regulations of the Bureau of Alcohol, Tobacco and Firearms of the Treasury Department (hereinafter, "Bureau"), on ingredient labeling of distilled spirits were meetings of "advisory committees" utilized by Defendant Rex Davis, Director of the Bureau, to obtain advice within the meaning of Section 3(2) of the Federal Advisory Committee Act of 1972 (hereinafter, "Act"), 5 U.S.C. App. I, and, therefore, "open to the public". 5 U.S.C. App. I & 10(a)(1). The Court has concluded that the two meetings in question were subject to the Act and, accordingly, the Defendant was required to provide public access to each meeting pursuant to Section 10(a)(1) of the Act and to follow the Act's procedural requirements. The Court will, therefore, grant Plaintiff's Motion for Summary Judgment and enjoin the Defendant and his agents, servants, and employees from convening any future meetings of the advisory committees discussed herein, or meetings of any of their advisory committees, without complying fully with the Act's requirements, and from excluding plaintiff or its agents or employees from any such meetings in contravention of the Act.

## I

## BACKGROUND

Plaintiff Food Chemical News, a weekly trade journal that reports generally on matters concerning the Government regulation of food products and chemicals, brought the instant action under the Federal Advisory Committee Act of 1972 to compel Defendant Davis to open to the public certain meetings he scheduled separately with consumer and industry groups. In an effort to delay the meetings until the public access issue could be effectively resolved, Plaintiff applied to the Court for a Temporary Restraining Order seeking to enjoin the Defendant from holding the meetings unless Plaintiff would be permitted to send a representative to them. On February 4, 1974, Judge Corcoran of this Court, sitting as motions judge, denied Plaintiff's application, but set down a date for argument on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss which were heard by this Court on February 13, 1974. In light of the fact that both meetings had already taken place at the time of oral argument before the Court, the parties agreed to stipulate that the case could be disposed of as a matter of law and their respective motions could be treated as cross motions for summary judgment. In addition, the parties reached agreement upon and ultimately filed with the Court a stipulation of material facts which are not in dispute. Such is the present posture of this case. The Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1361 and 5 U.S.C. §§ 702–704.

The undisputed facts indicate that the Bureau is presently considering amendments to 27 C.F.R. Part 5, which covers the labeling and advertising of distilled spirits, and in this regard has prepared a draft of several proposed amendments to the regulations set forth therein. Prior to the commencement of this suit, the Director of the Bureau, Defendant Davis, obtained the preliminary views of representatives of interested industry and consumer committees respecting the proposed amendments and scheduled separate meetings with these groups to discuss the proposals and obtain the group's "comments or suggestions". (See Exhibit A to the Amended Complaint) These meetings were intended to precede any notice of the proposed rulemaking or notice of a public hearing in the Federal Register.

Plaintiff, by letter of January 24, 1974, advised the Defendant that Plaintiff was entitled to send a representative to both meetings pursuant to Section 10(a)(1) of the Act, which provides in pertinent part:

"*Each advisory committee meeting shall be open to the public.*" 5 U.S.C. App. I § 10(a)(1). (Emphasis added).

Plaintiff sought access to the meeting in order to report to the public on the discussion and recommendations behind closed doors of these groups as to the Bureau's proposed regulations pertaining to the alleged widespread use of artificial colorings and synthetic chemical preservatives in the preparation of wine, beer and distilled spirits. At present such ingredients and additives are not fully listed on the labels of these products as offered to the consumer. In response, the Defendant denied that the Act indeed applied to the scheduled meetings and explained that the meeting would be closed to the public and, therefore, members of the press such as Plaintiff would be excluded. Plaintiff then brought the instant action and shortly thereafter the Defendant met separately with the two groups in question.

## II

THE DEFENDANT'S UTILIZATION OF THE INDUSTRY AND CONSUMER COMMITTEES IN ORDER TO OBTAIN ADVICE ON THE DRAFT AMENDMENTS TO AGENCY REGULATIONS SUBJECTS THE COMMITTEES TO THE STRICT PROCEDURAL REQUIREMENTS OF THE ADVI-

SORY COMMITTEE ACT INCLUDING, AMONG OTHER THINGS, THAT MEETINGS BETWEEN THE DEFENDANT AND PRIVATE INDIVIDUALS COMPRISING THE COMMITTEE BE ACCESSIBLE TO THE PUBLIC

It is the Court's opinion that the industry and consumer committees were "advisory committees" within the meaning of Section 3(2) of the Act which reads in pertinent part:

The term "advisory committee" means any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or any other subgroup thereof (hereinafter in this paragraph referred to as "committee") which is

. . .

(C) *established or utilized by one or more agencies*

*in the interest of obtaining advice or recommendations* for the President of one or more agencies or officers of the Federal Government . . . (emphasis added).

It is undisputed that the Defendant utilized an *ad hoc* committee of industry representatives in order to obtain advice. Such a relationship, like that with the consumer group, clearly comes within the terms of Section 3(2) of the Act. Aviation Consumer Action Project v. Yohe, et al, C.A. No. 707–73 (D.D.C. June 24, 1974).

■ Defendant argues that an "advisory committee" under the Act may not meet or take any action until its establishment is determined as a matter of formal record pursuant to the provisions of Section 9(a)–(c) of the Act. It does not follow, however, that because such formalities were not observed with respect to the instant committees, the meetings of the committees were not subject to the Act's public access requirement. Clearly where, as here, a federal agency utilizes an advisory committee for the purpose of obtaining advice, the agency must charter and establish the committee in compliance with all the terms of the Act. Failure to comply with such requirements cannot be employed as a subterfuge for avoiding the Act's public access requirements.

■ The purpose of the Federal Advisory Committee Act to control the advisory committee process and to open to public scrutiny the manner in which government agencies obtain advice from private individuals is furthered by the Court's action herein. Indeed, Congressional concern for informal meetings such as those in the case at bar contributed to the statute's enactment:

"The lack of public scrutiny of the activities of advisory committees was found to pose the danger that subjective influences not in the public interest could be exerted on the Federal decision-makers". S.Rep. 92–1098, 92nd Cong. 1st Sess. 6 (Sept. 7, 1972).

The potential dominance of the advisory committees in an increasingly complex bureaucratic environment and the evils that would flow from such dominance were fully reported by the House Committee on Government Operations which, in reporting out the legislation, stated in part:

"One of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns. Testimony received at hearings before the Legal and Monetary Affairs Subcommittee pointed out the danger of allowing special interest groups to exercise undue influence upon the Government through the dominance of advisory committees which deal with matters in which they have vested interests." H.Rep. 92–1017, 92nd Cong., 2d Sess. 6 (Apr. 25, 1972) U.S.Code Cong. & Admin.News 1972, p. 3496.

The subject matter of the meetings in question involved serious and much-debated public health issues concerning the merits of chemical additive labeling requirements for beer, wine and distilled spirits. The Government's consideration of such sensitive issues must not be un-

duly weighted by input from the private commercial sector, lest the Government fall victim to the devastating harm of being regulated by those whom the Government is supposed to regulate in the public interest. Moss v. C. A. B., 139 U.S.App.D.C. 150, 430 F.2d 891, 893 (1970).

Finally, there is the interest of consumers who, for the purposes of their individual well-being, seek information regarding the chemical additives applied to the foods and beverages they purchase, have an identifiable interest in the information considered by the Government in conjunction with advisory meetings held with industry and consumer committees. To a large extent, such individuals must depend on the press, and in particular, trade journals like Plaintiff, to advise them of new developments in the Government's regulatory efforts. Plaintiff's ability to adequately inform the public respecting Government conduct turns on the Government's compliance with the Advisory Committee Act's procedural requirements. Thus, it is imperative that public access to advisory committee meetings be provided by the Government if the Act is to become a reality and individuals such as Plaintiff are to have the opportunity to discharge their responsibility to inform the public. It is this Court's intention to fully enforce the Act's procedural requirements and thereby involve the public in the advisory committee process in the manner Congress intended. To do otherwise would allow the powerful executive branch of government to conduct its business behind closed doors in a manner that would prevent the press from performing its aforementioned responsibility to keep the public informed.

The press, as represented here by Plaintiff, has a statutory right under the Act as well as a First Amendment privilege to report on the manner in which Government affairs are conducted. This Court regards such a right or privilege as among this nation's most sacred protections against tyranny and op-

pression at the hand of the Executive, and, accordingly, the Court will do all that is within its power to safeguard the public's right to know.

For all the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment by Order of even date.