**CENTER FOR AUTO SAFETY et al., Plaintiffs,**

v.

**Norbert T. TIEMANN et al., Defendants.**

**Civ. A. No. 74–1662.**

United States District Court, District of Columbia.

April 28, 1976.

Stanton R. Koppel, Mark Steinbach, Washington, D. C., for plaintiffs.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Ann S. DuRoss, Asst. U. S. Attys., for defendants; Edwin J. Reis, Asst. Chief Counsel, Stanley H. Abramson, Atty., Federal Highway Administration, of counsel.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

In this lawsuit, plaintiffs challenge certain procedural and substantive aspects of the federal government's administration of the federal-aid highway program. Specifically, plaintiffs seek injunctive and declaratory relief to restrain the Secretary of Transportation and the Federal Highway Administrator from implementing § 116 of the Federal-Aid Highway Act of 1973, 23 U.S.C. § 117. Jurisdiction is provided by 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (mandamus); 28 U.S.C. § 1337 (commerce); and 5 U.S.C. § 702 (Administrative Procedure Act). Plaintiff Center for Auto Safety is a nonprofit corporation organized under the laws of the District of Columbia.

Its activities center broadly upon transportation safety issues, and its functions include monitoring the activities of the Federal Highway Administration. Plaintiff Clark is a resident of the state of Georgia and a user of that state's highways. Defendant Coleman is the Secretary of Transportation and is charged with the responsibility of administering the Federal-Aid Highway Act. The Secretary has delegated the responsibility for promulgating regulations and otherwise administering 23 U.S.C. § 117 to defendant Tiemann, the Federal Highway Administrator. 49 C.F.R. § 1.48(b)(14)(ii).

The case is currently before the Court on defendants' motion for summary judgment, or in the alternative to dismiss, on all four counts of plaintiffs' complaint. Plaintiffs have opposed defendants' motion and have filed cross-motions for summary judgment on three of the four counts of their complaint. As to three of the counts, the parties assert, and the Court agrees, that there are no material facts in issue.

## I. BACKGROUND.

The Federal-Aid Highway Act, 23 U.S.C. §§ 101 et seq., establishes a cooperative federal-state program for the development of safe, efficient, and economical roads across the country. Under the Act, states may obtain federal funds to subsidize the planning, design and construction of highways. State highway projects funded under the Act are subject to federal supervision through which the government seeks to insure that the highways built meet acceptable safety standards. In this regard, the Secretary must meet various safety-related responsibilities in supervising state highway programs under the Act.

Section 116 of the Federal-Aid Highway Act of 1973, 23 U.S.C. § 117, altered the federal-aid highway program by providing an alternative procedure through which the Secretary can discharge his safety-related responsibilities. Rather than perform the detailed review of state highway projects previously required by the Act, the Secretary can, under 23 U.S.C. § 117, accept "certification" from a state if he finds that its projects "will be carried out in accordance with State laws . . . and standards establishing requirements at least equivalent to those contained in, or issued pursuant to, this title." 23 U.S.C. § 117(a).[1] This alternative procedure established by 23 U.S.C. § 117 is known as "Certification Acceptance" (CA).

Pursuant to 23 U.S.C. § 117(c), defendant Tiemann promulgated Certification Acceptance regulations on May 8, 1974. The regulations, now published at 23 C.F.R. § 640, were effective upon issuance and were published in the Federal Register on May 15, 1974. 39 Fed.Reg. 17309 (1974). The regulations were promulgated without notice of proposed rulemaking, opportunity for public participation or delay in effective date, as normally required by the rulemaking provision of the Administrative Procedure Act (APA), 5 U.S.C. § 553, because, according to the agency, the regulations related to a federal grant program and were therefore exempt from the APA under 5 U.S.C. § 553(a)(2). The agency did, however, provide an opportunity for post-issuance comments on the regulations, and the plaintiff Center for Auto Safety took advantage of that opportunity by filing comments and engaging in discussions concerning Certification Acceptance procedures in the months following the promulgation of the regulations.

In the process of developing the Certification Acceptance regulations, the federal

---

1. In its entirety, § 117(a) reads as follows:

   (a) The Secretary may discharge any of his responsibilities under this title relative to projects on Federal-aid systems, except the Interstate System, upon the request of any State, by accepting a certification by the State highway department, or that department, commission, board, or official of any State charged by its laws with the responsibility for highway construction, of its performance of such responsibilities, if he finds such projects will be carried out in accordance with State laws, regulations, directives, and standards establishing requirements at least equivalent to those contained in, or issued pursuant to, this title.

defendants distributed draft regulations to and sought advice from various state and local officials. Among those with whom the draft regulations were discussed were members of the American Association of State Highway and Transportation Officials (AASHTO), an organization consisting of representatives of state highway and transportation departments and officials of the United States Department of Transportation. Specifically, Federal Highway Administration (FHWA) officials met with officials of AASHTO on several occasions from August 1973 to April 1974 to discuss the proposed regulations. In addition, a Certification Acceptance "review package" was sent to each member of the Directives Review Committee of AASHTO. The agency received comments on the review package from several of the committee members.

On April 15, 1974, a month before official publication of the Certification Acceptance regulations, the state of Georgia submitted a plan for approval under 23 U.S.C. § 117. On September 3, 1974, after review at the agency level, defendant Tiemann accepted Georgia's certification, subject to certain conditions. Georgia thus became the first state to have an approved Certification Acceptance plan.

Plaintiffs' challenge to the administrative action described above is four-pronged. First, plaintiffs challenge the Certification Acceptance regulations on the ground that they were not promulgated in compliance with the rulemaking provision of the Administrative Procedure Act (APA), 5 U.S.C. § 553. Second, plaintiffs claim that AASHTO is an advisory committee within the meaning of the Federal Advisory Committee Act, 5 U.S.C. App. I, and that the meetings between AASHTO and the agency were therefore held in violation of the procedural requirements of that Act. Third, plaintiffs challenge the agency's approval of Georgia's Certification Acceptance plan on the ground that the approval constituted rulemaking by the agency which was not performed in compliance with the APA, 5 U.S.C. § 553. Finally, plaintiffs claim that

the acceptance of Georgia's certification was a clear error of judgment and contrary to the mandate of 23 U.S.C. § 117, and they seek judicial review of that acceptance.

## II. PLAINTIFFS HAVE STANDING TO MAINTAIN THIS ACTION.

Before turning to the merits, the Court notes that plaintiffs clearly have standing to maintain the instant action. The pleadings and affidavits submitted by the plaintiffs are sufficient to satisfy the standing test set out by the Supreme Court in *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *United States v. S.C.R.A.P.,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). In those cases, the Supreme Court held that § 10 of the APA, 5 U.S.C. § 702, provides standing to obtain judicial review of agency action for those who can show that (1) the challenged agency action has caused them injury in fact, and (2) the alleged injury is to an interest arguably within the zone of interests to be protected by the statutes which the agencies are alleged to have violated.

Plaintiffs here have alleged injuries sufficient to meet the injury-in-fact requirement. In Counts I and III, plaintiff Center for Auto Safety (CFAS) alleges that defendants failed to comply with the rulemaking provisions of the APA, 5 U.S.C. § 553, and that such violation injured CFAS in its organizational activities which include, *inter alia,* the monitoring of the activities of the Federal Highway Administration, commenting upon methods and standards for improving safety on the highways, assisting individual motorists in obtaining correction of highway safety hazards, and advancing public awareness of highway safety issues. Plaintiff CFAS has asserted a need for information in order to inform the public and to comment on behalf of its contributors in regulatory proceedings which affect their interests in highway safety. This

need for information has been recognized as a sufficient basis for standing. *Scientists' Institute for Public Information, Inc. v. AEC,* 156 U.S.App.D.C. 395, 481 F.2d 1079, 1087 n.29 (1973); *Natural Resources Defense Council, Inc. v. SEC,* 389 F.Supp. 689, 697–98 (D.D.C.1974).

■ Similarly, in Count II, plaintiff CFAS alleges that defendants violated the provisions of the Federal Advisory Committee Act, 5 U.S.C. App. I, by failing to open meetings with AASHTO to the public and by denying plaintiff CFAS' request for transcripts of those advisory committee meetings. Plaintiff CFAS alleges that its exclusion from these meetings impaired the accomplishment of its organizational goals. For the reasons stated above, the Court finds this injury to plaintiff's organizational purposes sufficient to support plaintiff CFAS' standing to sue. Moreover, it appears that *any* plaintiff whose request for information under the Advisory Committee Act has been denied has standing to sue. *Nader v. Baroody,* 396 F.Supp. 1231, 1232 (D.D.C.1975).

■ In Count IV, plaintiffs allege that defendants committed a clear error of judgment and exceeded their statutory authority under 23 U.S.C. § 117 in approving Georgia's Certification Acceptance plan. Plaintiffs allege that the plan's deficiencies will lead to the construction of federal-aid highways which are unsafe and will directly disturb CFAS' and plaintiff Clark's use of those roads by increasing the likelihood that they will suffer bodily injury and property damage. The Court finds that this asserted

injury is sufficiently concrete and personal to the plaintiffs as highway users to grant them standing. As the Supreme Court recognized in *S.C.R.A.P., supra,* any level of injury in fact is sufficient to satisfy the standing requirement, 412 U.S. at 689 n.14, 93 S.Ct. at 2417, 37 L.Ed.2d at 270; the fact that many persons share the same injury is not a sufficient reason to deny standing to a person who has asserted injury in fact. *Id.* at 686, 93 S.Ct. at 2415, 37 L.Ed.2d at 269.

■ In addition to meeting the first requirement of standing by asserting injury in fact,[2] plaintiffs meet the second requirement since their interests are arguably within the zone of interests protected by the acts defendants are alleged to have violated. The safety interests which plaintiffs seek to vindicate are within the interests protected by the Federal Highway Act. See, *e. g.,* 23 U.S.C. §§ 105(f), 109(a), (d), (e) & (f). Plaintiffs' interest in participating in the proceedings which led to the adoption of the challenged regulations are within the zone of interests protected by the APA and the Federal Advisory Committee Act.

## III. DEFENDANTS PROPERLY INVOKED THE "GRANTS" EXEMPTION TO THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 553(a)(2).

The determinative issue in Count I of plaintiffs' complaint challenging the Certification Acceptance (CA) regulations on procedural grounds is whether the govern-

---

**2.** Defendants maintain that the recent Supreme Court decision in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), necessitates a finding here that plaintiffs lack standing. This Court, however, finds that case inapplicable to the present case. In *Warth,* the Supreme Court found that " . . . the facts alleged fail to support an actionable causal relationship between [defendants'] zoning practices and [plaintiffs'] asserted injury." *Id.* at 507, 95 S.Ct. at 2209, 45 L.Ed.2d at 359. Here, there is no question that the violations of the APA and Advisory Committee Act alleged in the first three counts of plaintiffs' complaint would, if proven, be directly related to plaintiffs' asserted injuries under those acts. In

Count IV, plaintiffs have alleged that defendants violated 23 U.S.C. § 117 by improperly approving Georgia's Certification Acceptance plan and have thereby made the Georgia roads less safe for highway users, including plaintiffs. One of the goals of the Federal-Aid Highway Act is to ensure the safety of roads built under the funding provisions of the Act. If defendants have failed to administer the Act properly, as plaintiffs allege, then it can reasonably be argued that their actions have made the roads less safe, leading to plaintiffs' asserted injury. Thus, unlike *Warth,* there is here an actionable causal relationship between defendants' action and plaintiffs' asserted injuries.

ment properly invoked the "grants" exemption to the rulemaking requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553(a)(2). Count III, challenging the approval of Georgia's CA plan, turns on the same issue and on whether that approval was in fact "rulemaking" within the meaning of the APA.

Procedural requirements for agency rulemaking are set forth in 5 U.S.C. § 553. However, under § 553(a)(2), the requirements are inapplicable "to the extent that there is involved . . . a matter relating . . . to public property, loans, *grants,* benefits or contracts." (emphasis added) It is the government's position that the CA regulations and approval are matters relating to grants; the government maintains, accordingly, that it was not required to comply with APA rulemaking procedures in promulgating the CA regulations or considering Georgia's CA plan.

Plaintiffs do not deny that the federal-aid highway program is a grant program. They maintain, however, that the grants exemption must be construed very narrowly. Specifically, they assert that the exemption comes into play only when an agency needs to take quick action which directly establishes conditions that grant recipients *must* meet in order to obtain federal approval for a project or which otherwise directly affects the amount of grant money which a recipient receives. In the instant case, the challenged agency action does not meet these alleged requirements, mainly because CA is an alternative procedure which the states need not go through at all in order to obtain federal funds.

Therefore, plaintiffs conclude, the challenged agency action is not protected by the grants exemption.

■ The problem with plaintiffs' proposition is that it is supported neither by the statute nor by the legislative history of 5 U.S.C. § 553(a)(2). The statute itself simply exempts matters "relating to" grants; it does not impose any additional requirements such as those suggested by plaintiffs. Of course, this Court must construe APA exemptions narrowly. Moreover, the Court is aware that the legislative history warns that the exemption should be applied only to matters "clearly and directly" related to grants. H.R.Rep.No.1980, 79th Cong., 2d Sess., reported in S.Doc.No.248, 79th Cong., 1st Sess., at 257 (1946), U.S.Code Cong.Serv. 1946, p. 1195. "Nevertheless, the language of the § 553(a)(2) exemption is very broad," according to the Administrative Conference of the United States. "Even if they are strictly construed . . . the § 553(a)(2) exemptions are extraordinarily broad and of very great significance. The language of these exemptions excludes an enormous quantity of rulemaking from the requirements of § 553." 1 *Recommendations and Report of the Administrative Conference of the United States* at 322 & 336 (1970).[3] Indeed, it is the very breadth of the exemption which led the Administrative Conference to call for the repeal of the exemption in the report cited above. Laudable as that goal may be, it is one which must be accomplished by Congress. This Court must render a construction of the exemption consonant with the statute and legislative history,[4] just as other courts which have con-

---

**3.** The author of the Report of the Administrative Conference, Professor Arthur Bonfield, is a recognized expert in the field of APA exemptions. A law review article by Bonfield adopted from the Report, entitled "Public Participation in Federal Rulemaking Relating to Public Property, Loans, Grants, Benefits, or Contracts," appears at 118 *U.Penn.L.Rev.* 540 (1970). Bonfield has also written on the military and foreign affairs exemption to the APA: "Military and Foreign Affairs Function Rule-Making Under the APA," 71 *Mich.L.Rev.* 221 (1972).

**4.** Aside from the portion of the legislative history cited above, the only other explanation of the exemption in the committee reports is as follows: "The exception of proprietary matters is included because the principal considerations in most such cases relates to mechanics and interpretations or policy, and it is deemed wise to encourage and facilitate the issuance of rules by dispensing with all mandatory procedural requirements." S.Rep.No.752, 79th Cong., 1st Sess. (1945), reported in S.Doc.No.248, 79th Cong., 1st Sess. at 199 (1946). The language in the House report is nearly identical. S.Doc.No. 248, supra, at 257. This Court finds nothing in

sidered the same provision have done. *E. g., Rainbow Valley Citrus Corp. v. Federal Crop Insurance Corp.,* 506 F.2d 467, 468–69 (9th Cir. 1974); *Brown v. Housing Authority,* 471 F.2d 63, 67–68 (7th Cir. 1972).[5]

■ Thus applying the words of the statute, it is clear that the agency action in question relates to, indeed is directly related to, the federal-aid highway grant program. In promulgating CA regulations, the agency set standards and procedures by which states can qualify for federal highway grants. While CA approval does not involve an actual commitment of specific funds by the federal government, and while states may choose to forego the CA procedure altogether and opt for more detailed supervision, the CA procedure nonetheless provides a method by which states can (and no doubt many will) qualify for federal aid. It is therefore an integral part of the grant program. It follows that if the promulgation of CA regulations constitutes "a matter relating to . . . grants," *a fortiori* the actual approval of a state's (in this case, Georgia's) certification is also agency action relating to a grant exemption and therefore exempt from the rulemaking requirements of 5 U.S.C. § 553.

On the basis of the foregoing, defendants are entitled to summary judgment on Counts I and III of plaintiffs' complaint, and those counts will be dismissed.[6]

## IV. AASHTO IS AN ADVISORY COMMITTEE WITHIN THE MEANING OF THE FEDERAL ADVISORY COMMITTEE ACT, 5 U.S.C. APP. I.

The Federal Advisory Committee Act, 5 U.S.C. App. I, provides, *inter alia,* for broad rights of public access to meetings and records of advisory committees to the federal government. See §§ 9 & 10, 5 U.S.C. App. I. Plaintiffs in the instant suit allege that the American Association of State Highway and Transportation Officials (AASHTO) served as an advisory committee to the defendants in the course of the development of the Certification Acceptance regulations. Specifically, according to plaintiffs, AASHTO and Highway Administration officials met on several occasions from August 1973 to April 1974 to discuss the proposed regulations. In addition, a Certification Acceptance "review package" was sent to each member of AASHTO's Directives Review Committee for comment. These contacts constituted advisory committee meetings, according to plaintiffs, and they should have been open to the public. Plaintiffs seek a declaration that defendants' past conduct was illegal under the Advisory Committee Act, and injunctive relief requiring that all such future consultations be conducted in accordance with the Act. Plaintiffs also ask the Court to invalidate the CA regulations and the agency's approval of Georgia's CA plan on the ground that, in both cases, the defendants'

that sentence which lends support to plaintiffs' interpretation of the exemption.

5. In a case currently pending before the Court of Appeals for this circuit, plaintiff-appellant argues that the grants exemption was intended to cover only the government's "private" proprietary interests. Matters of great public import were not meant to fall within the exemption, according to the appellant. Brief for Appellant, at 17–31 (May 16, 1975), *National Wildlife Federation v. Tiemann,* No. 75–1214 (D.C.Cir. Jan. 20, 1975). This argument would seem to have been undercut by this circuit's most recent pronouncement on the grants exemption, in which the court indicated in dictum that the Department of Agriculture's food stamp program "would appear to be a matter

relating to public 'grants' or 'benefits,' thereby exempting rules relating to the program from the APA." *Rodway v. USDA,* 168 U.S.App. D.C. 387, 514 F.2d 809, 813 (1975). Needless to say, the food stamp program is a program of great public import.

6. While the Court thus concludes that the agency was within its legal rights in invoking the grants exemption, the Court also notes that some agencies have voluntarily waived the § 553(a)(2) exemption. *E. g.,* 36 Fed.Reg. 13804 (1971) (USDA), as discussed in *Rodway v. USDA,* 168 U.S.App.D.C. 387, 514 F.2d 809, 814 (1975). One of the obvious benefits of such an approach is that it makes unnecessary expensive litigation such as the instant suit.

failure to comply with the Act tainted the subsequent agency action.

Defendants admit in their Answer that "officials of the FHWA met on several occasions and otherwise communicated with State members of the AASHTO in the interest of obtaining advice or recommendations relating to a draft of FHWA's proposed CA regulations prior to formal promulgation of said regulations on May 15, 1974." Answer, ¶ 35. But defendants maintain that AASHTO is not an "advisory committee" within the definition of and exemptions to that term as set forth in the Act.

The Court turns first to the question of whether AASHTO falls within § 3(2) of the Act, in which "advisory committee" is defined as "any committee, board, commission, council, conference, panel, task force, or other similar group . . . established or utilized by one or more agencies" in an advisory capacity. Since there is no contention that AASHTO was established by a federal agency, the question turns on whether AASHTO is "utilized" by an agency, specifically the Department of Transportation. Applying the definition is not as simple as it first seems, for, as Judge Gesell of this court has noted, "the Act contains a very broad, imprecise definition, and in this respect is not a model of draftsmanship." *Nader v. Baroody,* 396 F.Supp. 1231, 1232 (D.D.C.1975). A brief review of the relevant legislative history serves, however, to dispel any confusion as to the meaning of "utilized."

■ The word "utilized" did not appear in the House version of the bill. However, the House committee report makes it clear that the definition of "advisory committee" was intended to include "those committees which may have been organized before their advice was sought by . . . any agency, but which are used by . . . any agency in the same way as an advisory committee formed by the . . . agency itself." H.R.Rep.No.92–1017, 92d Cong., 2d Sess., reported in 2 U.S.Code Cong. and Admin.News at p. 3494 (1972).[7] "Thus, the bill that originally passed the House covered committees which were 'used' by an agency as advisory committees . . . ." *Lombardo v. Handler,* 397 F.Supp. 792, 798 (D.D.C.1975). The Senate definition of advisory committee was even more expansive.[8] In conference, the House definition was adopted with modifications, including the insertion of "utilized" into the bill to make explicit the congressional intention discussed above. H.R.Conf.Rep.No. 1403, 92d Cong., 2d Sess., 2 U.S.Code Cong. and Admin.News at p. 3509 (1972).[9]

**7.** This was consistent with the definition of "advisory committee" contained in an executive order in effect before the passage of the Act: "The term also includes any committee . . . not formed by a department or agency . . . when it is being utilized by a department or agency in the same manner as a Government-formed advisory committee." Exec.Order No. 11007, as reported in 2 U.S. Code Cong. and Admin.News at p. 3493 (1972). The Act "incorporates elements" of the definitions contained in the executive order, including the element discussed above. H.Rep.No. 92–1017, *id.* at 3483.

**8.** In the Senate version of the bill, "advisory committee" included "any committee . . . established or organized . . . for the purpose of furnishing advice, recommendations, or information to any officer or agency . . . ." The Senate Committee report explained that "the words 'established' and 'organized'" should be interpreted "in their most liberal sense, so that when an officer brings together a group by formal or informal means . . . to obtain advice and information, such group is covered by the provisions of this bill." S.Rep. No.92–1098, 92d Cong., 2d Sess., at 6–8 (1972). See *Lombardo v. Handler,* 397 F.Supp. 792, 798 (D.D.C.1975) for a discussion of the Senate report. In defining the limits of the Act, the conference report also employed the word "established," presumably with the same intention that it be given a broad interpretation: "The Act does not apply to . . . advisory committees not directly established by or for such agencies." H.R.Conf.Rep.No.92–1403, 92d Cong., 2d Sess., 2 U.S.Code Cong. and Admin. News at p. 3509 (1972).

**9.** Defendants maintain that if a committee is not actually created by an agency, it cannot be "established by or for such agencies" within the meaning of that phrase as found in the conference report. See H.R.Conf.Rep.No.92–1403, *supra* note 8. In support of this proposition, defendants rely on explanatory comments made on the floor of the House by the senior House conferee after the bill had returned from

In light of the legislative history, it seems clear that AASHTO has been "utilized" by the defendants within the meaning of that term as employed in § 3(2) of the Act. This is not a case in which the government merely provided a "sounding board" for the generalized views of an "amorphous, ad hoc group." *Nader v. Baroody*, 396 F.Supp. 1231, 1234 & 1233. Instead, as the government readily admits, it went directly to AASHTO, among other groups, for specific advice on pending draft regulations. In doing so, the government employed AASHTO much as advisory committees are frequently and traditionally employed. *See Food Chemical News, Inc., v. Davis*, 378 F.Supp. 1048 (D.D.C.1974); *Consumers Union v. HEW*, 409 F.Supp. 473 (D.D.C.1976).

Thus, AASHTO falls within the definition of "advisory committee" found in the Advisory Committee Act. But several provisions limit the applicability of the Act. In § 3(2)(i), the Advisory Commission on Intergovernmental Relations is specifically excluded from the Act. In addition, § 4(c) provides that the Act shall not "be construed to apply to any . . . State or local committee, council, board, commission, or similar group established to advise or make recommendations to State or local officials or agencies." ·Defendants contend that each of these provisions operates to exclude AASHTO from the Act.

The first contention is quickly dismissed. The Advisory Commission on Intergovernmental Relations (ACIR) was created pursuant to 42 U.S.C. § 4271 *et seq.*, and serves as a vehicle for intergovernmental consultations between federal, state and local governments on programs requiring intergovernmental cooperation. Under the Intergovernmental Cooperation Act of 1968, ACIR is given specific responsibilities with respect to federal grant-in-aid programs. 42 U.S.C. § 4243. ·The Intergovernmental Cooperation Act also provides for comments by state and local agencies on proposed federal regulations and other actions which have a significant effect on state and local governments. *E. g.*, 42 U.S.C. § 4231(d). This purpose of the Act is implemented through OMB Circular No. A–85 (Jan. 20, 1971). Defendants in this case maintain that their consultations with AASHTO are consistent with and merely supplemental to the Intergovernmental Cooperation Act and OMB Circular No. A–85, and plaintiffs do not dispute the point. Defendants also maintain, however, that the "consultations between FHWA and AASHTO share the same unique characteristics of ACIR consultations in that they are consultations between governmental bodies at different levels; thus, these consultations should be exempt from FACA requirements." Defendants' memorandum of August 4, 1975, at 23. In this latter contention, defendants perform a leap of logic unauthorized by the Advisory Committee Act, for the Act merely excludes ACIR from its terms and does not provide a broad exclusion for all "consultations between governmental bodies at different levels." Moreover, the legislative history of the Advisory Committee Act supports the proposition that the ACIR exclusion was meant to be limited to that commission because of its "unique character." H.R.Rep.No.92–1027, 2 U.S.Code Cong. and Admin.News at p. 3494 (1972). Therefore, the ACIR exclusion is unavailable to de-

conference. 118 Cong.Rec. 31421 (1972) (remarks of Rep. Holifield in response to questions by Rep. Horton). See a discussion of these remarks in *Lombardo v. Handler*, 397 F.Supp. 792, 799 (D.D.C.1975). ·The overwhelming weight of the legislative history, as discussed above, points to an opposite conclusion, i. e. that the Act was intended to apply to committees created by agencies *and* to those not originally created by agencies but subsequently used by them as advisory committees. See note 7, *supra*, and accompanying material

in the text; *Lombardo, supra*, 397 F.Supp. at. 798. Moreover, again as discussed above, the word "established" was intended to have a very broad meaning. See note 8, *supra*. Finally, it is well to remember that the most important source, the statute itself, includes within the definition of "advisory committee" any committee "established *or utilized*" by an agency (emphasis added) and thus does not require that a committee actually be created by an agency in order to be covered by the Act.

fendants to shield AASHTO from the Advisory Committee Act's requirements.[10]

■ It also seems clear that AASHTO cannot benefit from § 4(c) of the Advisory Committee Act, which warns that the Act was not meant to apply to state or local committees established to advise state or local governments. At the outset, it is questionable as to whether AASHTO is a state or local committee. As noted in part I, *supra*, AASHTO is a nationwide association consisting of representatives of state highway and transportation departments *and* federal officials from the Department of Transportation. In fact, the Secretary of Transportation is a member *ex officio* of AASHTO's executive committee. See Art. II and III, AASHTO Constitution. But even assuming *arguendo* that AASHTO is a state committee, it did not, at the meetings at issue in this case, advise state or local officials or agencies. Rather, it was called upon by the federal government to advise in the formulation of regulations implementing 23 U.S.C. § 117. Nor can it be maintained that in advising the federal government AASHTO made a sharp departure from its normal activities. The organization's Constitution, the exhibits in this case, and the statements and admissions of the parties all make it clear that a significant part of AASHTO's *raison d'etre* is to offer advice, often solicited, to the federal government. No doubt, AASHTO also serves to advise state governments, and by the terms of the Advisory Committee Act itself such consultations are not affected by the Act. But when AASHTO acts in its capacity as solicited advisor to the federal government, the government must treat AASHTO as an advisory committee and comply with all of the requirements of the Advisory Committee Act.[11]

The defendants argue that to treat AASHTO, an organization of government officials, as an advisory committee does not serve the purpose of the Act; for, defendants contend, the Advisory Committee Act was designed to bring to the light of day consultations between representatives of private interests and the federal government, *not* discussions between fellow public-servants. Plaintiff replies that as representatives of the recipients of grants under the federal-aid highway program, AASHTO members speak for "special interests" as much as members of more traditional advisory committees. The truth lies somewhere between the parties' positions. AASHTO *is* made up of public servants. But those state employees also represent the "regulated" in the federal-aid highway program before the "regulators," the federal government. *See Moss v. CAB*, 139 U.S.App.D.C. 150, 430 F.2d 891, 893 (1970). Absent a

---

10. In a claim related to their contention that AASHTO is exempt under the ACIR exclusion, defendants suggest that § 3(2)(iii) of the Act, which excludes "any committee which is composed wholly of full time officers or employees of the Federal Government," implicitly exempts AASHTO, a committee of state and federal employees. Defendants suggest that the policy behind § 3(2)(iii)—to prevent the Act from including a committee of government employees serving the public, not special interests—would be served by exempting AASHTO. It is sufficient to note, in response to defendants' argument, that Congress has the means, when it so desires, to exclude state employees from the operation of its acts. *E. g.*, the Federal Regulation of Lobbying Act, 2 U.S.C. § 267. The exclusion in § 3(2)(iii) of the Advisory Committee Act is specifically limited to committees made up *wholly* of federal officials, and AASHTO clearly does not qualify.

11. The implication of the above holding is that, depending on their specific activities, advisory groups can have shifting identities for purposes of the Advisory Committee Act; i. e., they can serve as advisory committees within the meaning of the Act while performing certain functions and, on other occasions, fall outside the ambit of the Act. That such a holding is consistent with Congressional intent can be seen from the legislative history. As noted above, see note 7, *supra*, the drafters of the House bill relied to a certain extent on a prior definition of "advisory committee" contained in an executive order. That definition included committees formed by the agencies which the committees were intended to advise, as well as "any committee . . . not formed by a department or agency, *but only during any period* when it is being utilized by a department or agency in the same manner as a Government-formed advisory committee." H.R.Rep.No.92–1017, 2 U.S.Code Cong. and Admin.News at p. 3493 (1972) (emphasis added).

specific statutory provision excluding committees consisting of state or local officials from the operation of the Advisory Committee Act,[12] this Court must find that, in the present circumstances, AASHTO falls within the Act's ambit.

Plaintiffs are thus entitled to summary judgment on their Advisory Committee Act claim. But the additional question arises as to what relief should be afforded. Of course, the Court should and will issue an order setting forth the government's responsibilities under the Act with respect to AASHTO. But plaintiffs request, additionally, that the CA regulations be overturned because they were promulgated in part on the basis of advice received as a result of unlawful contacts with AASHTO. Plaintiffs ask also that the government's approval of Georgia's CA plan under the tainted regulations be set aside. The Court declines to provide such relief.

■ As to the regulations, the Court notes that while this case has been pending, revised CA regulations were published in draft form and public comment was invited. 41 Fed.Reg. 6914 (Feb. 13, 1976). The revised regulations were given an effective date of March 15, 1976, on an interim basis (in order to recognize "the temporary status of these provisions in light of ongoing Congressional activity in this area." Id.). In light of the fact that the original regulations are no longer in effect and that the present regulations, while similar in a number of respects to the original version, are also envisioned as temporary, it would make little sense to overturn the original regulations at this point.

■ As to the acceptance of Georgia's certification pursuant to the original tainted regulations, the Court makes several observations. First, it is not at all clear to the Court that the "taint" stemming from unlawful advisory committee meetings extends through the subsequently-adopted regulations to the approval of a state plan under those regulations. Plaintiff has not addressed this issue, despite the fact that, in claiming that agency action should be set aside for procedural irregularity under 5 U.S.C. § 706(2)(D), it is plaintiffs' burden to show that prejudice has resulted. E. g., NLRB v. Seine and Line Fishermen's Union, 374 F.2d 974, 981 (9th Cir. 1967). Second, the Court notes that plaintiff CFAS was able, albeit through its own initiative, to comment on the Georgia CA plan while it was pending before the agency. Finally, as discussed in part IV, infra, plaintiffs are entitled to substantive judicial review in this Court of defendants' acceptance of Georgia's certification. In light of all of these factors, the Court does not deem it appropriate to invalidate Georgia's Certification Acceptance.

## V. PLAINTIFFS ARE ENTITLED TO JUDICIAL REVIEW OF DEFENDANTS' DECISION TO APPROVE THE GEORGIA CA PLAN.

In Count IV of their complaint, plaintiffs seek judicial review, under the Administrative Procedure Act, 5 U.S.C. § 702, of the defendants' decision to approve Georgia's certification. Plaintiffs claim that the approval was procedurally deficient because the FHWA Administrator, defendant Tiemann, did not make a formal finding, as required by 23 U.S.C. § 117, that Georgia has safety standards at least as stringent as federal requirements and that its highway projects will be carried out in accordance with those standards. Plaintiffs also claim that defendants' decision to approve Georgia's certification was, on the merits, a clear error of judgment. Defendants have moved to dismiss Count IV on the ground that the agency action in question, approval of a state's certification plan under 23 U.S.C. § 117, "is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and therefore unreviewable.

■ The Supreme Court has recently reiterated that the "agency discretion" exception to judicial review is "very narrow" and is "applicable in those rare instances where 'statutes are drawn in such broad

**12.** See note 10, *supra*.

terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136, 150 (1971). With that standard in mind, it is necessary to examine the statute in question, 23 U.S.C. § 117, to determine if it commits agency action to the agency's discretion.[13] The statute indicates that the Secretary "may" discharge his responsibilities under the federal-aid highway program by accepting a state's certification. To that extent, it appears to leave to the Secretary's discretion the initial decision of whether to employ the procedure in a given situation. But once he decides to employ the CA procedure, he has a mandatory duty under the act to find, before he approves a state certification, that the state in question will carry out its projects in accordance with state safety standards at least as stringent as federal standards.[14] Thus, while his discretionary decision not to employ CA is unreviewable, his decision to approve a state's certification is dependent upon mandatory findings and is therefore subject to judicial review. *See City of Chicago v. United States,* 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969); *Ferry v. Udall,* 336 F.2d 706, 713 & n.13 (9th Cir. 1964).

■ As to formal findings, the Court finds that they are unnecessary. In this case, the Administrator's conclusion that sufficiently stringent Georgia standards exist was implicit in his official notice of certification approval sent to the Commissioner of the Georgia Department of Transportation. Formal findings are not usually required, see *Overton Park, supra,* 401 U.S. at 417–21, 91 S.Ct. at 824–26, 28 L.Ed.2d at 154–56, and the statute and regulations involved in the instant case do not call for such findings. The Court is confident that it can review the Administrator's actions on the basis of the record, without formal findings. *Id.*

**13.** See note 1, *supra,* for the text of § 117(a).

**14.** Nothing in the legislative history of § 117 suggests that the decision to approve a state's

It will be necessary to arrange a timetable for the submission of the agency record and memoranda in support of the parties' respective positions on review, in order that the final count of this complaint may be adjudicated. Accordingly, the Court has asked the parties to submit a timetable for said submissions in the Order, issued in accordance with the foregoing Memorandum Opinion of even date herewith.

certification is left to the agency's discretion. *E. g.,* Conf.Rep., H.R.Rep.No.93–355, 93rd Cong., 1st Sess., 2 U.S.Code Cong. and Admin. News at pp. 1949–50 (1973).