CITY OF CHICAGO ET AL. *v.* UNITED STATES ET AL.

No. 101.    Argued November 20, 1969—Decided December 9, 1969*

*Gordon P. MacDougall* argued the cause for appellants in both cases.    With him on the brief were *Raymond F. Simon, Charles E. Griffith III, Robert E. Kendrick, Arthur K. Bolton, Harold N. Hill, Jr., J. Robert Coleman, Edward J. Hickey, Jr., William G. Mahoney, Bernard Rane, Mark Goldstein, Eugene W. Ward, Chester L. Rigsby, Weldon A. Cousins,* and *Leon M. Despres. Howard E. Shapiro* argued the cause for the United States et al. urging reversal in both cases.    With him on the brief were *Solicitor General Griswold, Assistant Attorney General McLaren,* and *Robert W. Ginnane.*

*James W. Hoeland* argued the cause for appellees Chicago & Eastern Illinois Railroad Co. et al. in both cases.    With him on the brief were *Clifford T. Coomes, Joseph L. Lenihan, Harry R. Begley,* and *P. C. Mullen.*

*Paul Rodgers* filed a brief for the National Association of Regulatory Utility Commissioners as *amicus curiae* urging reversal in both cases.

---

*Together with No. 102, *City of Chicago et al.* v. *United States et al.,* also on appeal from the same court.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The question in these cases is whether orders of the Interstate Commerce Commission discontinuing investigations respecting the notice of rail carriers to terminate or change the operation or services of interstate passenger trains are judicially reviewable on the complaint of aggrieved persons.

Section 13a (1) of the Interstate Commerce Act, as amended, 72 Stat. 571, 49 U. S. C. § 13a (1), provides, with details not important here, that a rail carrier may file notice of such discontinuance or change with the Commission and that within 30 days the Commission may make an investigation of the proposed discontinuance or change. Apart from interim relief, the Commission may order continuance of the operation and service for a period not to exceed one year.[1]   One of the present cases involves two interstate passenger trains between Chicago and Evansville, Indiana, discontinued by the Chicago & Eastern Illinois Railroad Co., 331 I. C. C. 447, and the other involves two interstate passenger trains between New Orleans and Cincinnati discontinued by the Louisville & Nashville Railroad Co., 333 I. C. C. 720.

In each case the Commission, addressing itself to the standards in § 13a (1), found that continued operation of the trains was not required by public convenience and necessity and that continued operation would unduly burden interstate commerce. It thereupon entered in each case an order terminating its investigation of the proposed discontinuance.

---

[1] Section 13a (2), applicable to discontinuance of intrastate trains, provides that where a State bars discontinuance or change in operation or service of a train, or where the state authority has not acted on a carrier's application for such discontinuance or change within 120 days, the carrier may petition the Commission for a grant of such authority.

Appellants in each case—cities, state regulatory agencies, and other interested parties—brought these suits before the same three-judge court to review the Commission's decisions.   It is provided by 28 U. S. C. § 1336 (a):

"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in any part, any order of the Interstate Commerce Commission."

The District Court held that decisions terminating investigations under § 13a (1) are not "orders" within the meaning of 28 U. S. C. § 1336 (a).[2]   294 F. Supp. 1103, 1106.   The cases are here on direct appeal, 28 U. S. C. §§ 1253, 2325, and we noted probable jurisdiction. 395 U. S. 957.

As stated in *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 140, we start with the presumption that aggrieved persons may obtain review of administrative decisions unless there is "persuasive reason to believe" that Congress had no such purpose.   Certainly under § 13a (1) the carrier, if overruled by the Commission, could obtain review.   We can find no talismanic sign indicating that Congress desired to deny review to opponents of interstate discontinuances alone.

Section 13a in its present form came into the Act in 1958 and was designed to supersede the prior confused and time-consuming procedure under which the States

---

[2] There is a conflict among the District Courts.   *Minnesota* v. *United States,* 238 F. Supp. 107 (D. C. Minn.), and *New Hampshire* v. *Boston & Maine Corp.,* 251 F. Supp. 421 (D. C. N. H.), are in accord with the District Court in the instant cases.   Opposed to that view are *Vermont* v. *Boston & Maine Corp.,* 269 F. Supp. 80 (D. C. Vt.), and *New York* v. *United States,* 299 F. Supp. 989 (D. C. N. D. N. Y.).   And see *City of Williamsport* v. *United States,* 273 F. Supp. 899, 282 F. Supp. 46 (D. C. M. D. Pa.), aff'd, 392 U. S. 642.

supervised the discontinuance of passenger trains. Accordingly, Congress provided a uniform federal scheme to take the place of the former procedure.[3]  A *single federal standard* was to govern train discontinuances whether interstate or intrastate, though *the procedure* of § 13a (1) for discontinuance of an interstate train was made somewhat different from the procedure for discontinuance of intrastate trains.[4]  But the Commission is to have the final say in each case and "precisely the same substantive standard" now governs discontinuance of either interstate or intrastate operations. *Southern R. Co.* v. *North Carolina,* 376 U. S. 93, 103.

Whether the Commission should make an investigation of a § 13a (1) discontinuance is of course within its discretion, a matter which is not reviewable. *New Jersey* v. *United States,* 168 F. Supp. 324, aff'd, 359 U. S. 27.

---

[3] "Without reciting individual cases the subcommittee is satisfied that State regulatory bodies all too often have been excessively conservative and unduly repressive in requiring the maintenance of uneconomic and unnecessary services and facilities. Even when allowing the discontinuance or change of a service or facility, these groups have frequently delayed decisions beyond a reasonable time limit. In many such cases, State regulatory commissions have shown a definite lack of appreciation for the serious impact on a railroad's financial condition resulting from prolonged loss-producing operations.

"To improve this situation, the subcommittee proposes to give the Interstate Commerce Commission jurisdiction in the field of discontinuance or change of rail services and facilities similar to the jurisdiction it now has over intrastate rates under section 13 of the Interstate Commerce Act so that when called upon to do so it may deal with such matters that impose an undue burden on interstate commerce. This, the subcommittee believes, would protect and further the broad public interest in a sound transportation system and would prevent undue importance being attached to matters of a local nature." S. Rep. No. 1647, 85th Cong., 2d Sess., 22. For a review of the legislative history of § 13a (2), see *Southern R. Co.* v. *North Carolina,* 376 U. S. 93, 100–103.

[4] See n. 1, *supra.*

But when the Commission undertakes to investigate, it is under a statutory mandate:

> "Whenever an investigation shall be made by said Commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises . . . ." 49 U. S. C. § 14 (1).

A decision to investigate indicates that a substantial question exists under the statutory standards. The Commission's report therefore deals with the merits. We cannot say that an answer that discontinuance should not be allowed is agency "action," while an answer saying the reverse is agency "inaction." The technical form of the order is irrelevant. In each case the Commission is deciding the merits. The present cases are kin to the "negative orders" [5] which we dealt with in *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125, 142–143:

> "An order of the Commission dismissing a complaint on the merits and maintaining the *status quo* is an exercise of administrative function, no more and no less, than an order directing some change in status. The nature of the issues foreclosed by the

---

[5] The Administrative Procedure Act, 5 U. S. C. § 551 (6) (1964 ed., Supp IV), defines "order" as including a "negative" form of "a final disposition" by agency action. And that kind of "order" is subject to judicial review. 5 U. S. C. §§ 551 (13), 701 (b)(2), 702 (1964 ed., Supp. IV).

When carriers file new rates, the Commission has authority on its own initiative or on complaint to make an investigation either with or without suspension of the new rates. 49 U. S. C. § 15 (7). Where the Commission finds the proposed rates lawful, its order reads: "[T]he investigation proceedings [are] discontinued." See *Eastern Central Motor Carriers Assn.* v. *Baltimore & O. R. Co.,* 314 I. C. C. 5, 51. Such orders are reviewable. *Cooper-Jarrett, Inc.* v. *United States,* 226 F. Supp. 318, aff'd, 379 U. S. 6.

> Commission's action and the nature of the issues left open, so far as the reviewing power of courts is concerned, are the same. . . . We conclude, therefore, that any distinction, as such, between 'negative' and 'affirmative' orders, as a touchstone of jurisdiction to review the Commission's orders, serves no useful purpose, and insofar as earlier decisions have been controlled by this distinction, they can no longer be guiding."

The District Court reasoned that since "the statute is self-implementing," only an "order" requiring action is reviewable. 294 F. Supp., at 1106. But that theory is of the vintage we discarded in *Rochester Telephone.*

*Reversed.*