SEABOARD ALLIED MILLING CORP. et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION et al., Respondents.

BOARD OF TRADE OF the CITY OF CHICAGO et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION et al., Respondents.

Nos. 77–1729 and 77–1770.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1978.

Decided Feb. 16, 1978.

Rehearing and Rehearing En Banc Denied May 12, 1978.

John H. Caldwell, Washington, D. C., argued, for petitioners in case no. 77–1729, Seaboard Allied Milling Corp., et al., and on brief, for petitioners-intervenors Southeastern Poultry and Egg Assn.

Robert L. Thompson, App. Sec., Antitrust Div., U. S. Dept. of Justice, Washington, D. C., argued, for respondent, United States.

Harold E. Spencer (argued), Thomas F. McFarland, Jr., and Richard S. M. Emrich, III, Chicago, Ill., and W. Thomas McGhee, St. Louis, Mo., on brief, for petitioners, Board of Trade of the City of Chicago, et al.

Mark L. Evans, Gen. Counsel and Charles H. White, Jr., Associate Gen. Counsel, ICC (argued), Washington, D. C., on brief, for respondent, Interstate Commerce Commission.

Wandaleen Poynter, Jacksonville, Fla. (argued), Charles N. Marshall, Washington, D. C. (argued), Richmond C. Coburn, Adrian L. Steel, Jr., St. Louis, Mo., and Michael Boudin, Washington, D. C., on brief, for Railroad intervenors-respondents.

Rufus L. Edmisten, Atty. Gen., Richard L. Griffin, Associate Atty. Gen., Raleigh, N. C., on brief, for State of North Carolina.

John C. Noonan and Arthur J. Cerra, Kansas City, Mo., Peter A. Greene and Neal A. Jackson, Washington, D. C., on brief, for petitioners-intervenors Southeastern Poultry and Egg Association.

Theodore L. Sendak, Atty. Gen. of Indiana, William G. Mundy, Deputy Atty. Gen., Indianapolis, Ind., on brief, for intervenor-petitioner, State of Indiana, et al.

Before GIBSON, Chief Judge, and VAN OOSTERHOUT and MATTHES, Senior Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

These are consolidated actions brought to set aside the Interstate Commerce Commission's orders in Docket 36663, Demand-Sensitive Rates in Grain and Soybeans—Southern Freight Association Territory (SFA). The Commission in its orders refused to suspend and to investigate the railroads' proposed tariff providing a 20% increase in rail rates applicable from September 15 through December 15, 1977, on 29 grain products shipped to and within SFA territory and to stations in SFA territory from limited points in Illinois and Indiana. The rate increase applied only to carriage in railroad owned cars, not to carriage in privately owned cars. The increase was sought pursuant to § 202(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, Public Law 94–210, 49 U.S.C. § 15(17).[1]

The proposed tariff was published and filed with the Interstate Commerce Com-

---

1. Such Act provides:
   Within one year after February 5, 1976, the Commission shall establish, by rule, standards and expeditious procedures for the establishment of railroad rates based on seasonal, regional, or peak-period demand for rail services.

mission on August 18, 1977, by the SFA authorized agent for the interested railroads and was to become effective on September 15, 1977. Protests were filed with the Interstate Commerce Commission by some 35 separate entities or organizations representing major elements of the agricultural community including many large-scale poultry producers who used considerable quantities of transported grain. Most of them are plaintiffs or intervenors in these consolidated actions.

The issues here raised were raised before the Commission. The affected railroads responded to such protests. Included were the contentions that the Commission should suspend the tariff and investigate the charges that the tariff violated the long-and-short haul provisions of 49 U.S.C. § 4(1), that applying the increase only to railroad-owned cars was discriminatory, and that the increase did not serve the purpose of § 15(17) and the regulations promulgated thereunder, published in 49 C.F.R. §§ 1109.-10 et seq.

On September 14, 1977, Division Two of the Commission, consisting of three members, filed a summary order reciting that 49 U.S.C. §§ 1, 2, 3, 4, and 15(17) violations had been charged but not established and denied petition for review of the tariff. On the same date the entire Commission in an order states:

Several protestants also claim that the proposal would result in unauthorized departures from the long-and-short haul clause of Section Four of the Act. They offer rate examples purporting to demonstrate these departures. In rebuttal, respondent presents argument and tariff citations to disprove protestants' claims.

In addition, respondent states that it intends to avoid any potential Section Four violations and it commits itself to making tariff changes to remove any of these called to its attention. The evidence offered to support the alleged violations of Section Four of the Act does not warrant suspension of this proposal. However, respondents are admonished to take prompt action to remove violations of the long-and-short haul provision of Section 4(1) of the Act, if any, in connection with inter-territorial and intra-territorial movements that may be caused by application of demand-sensitive rates on whole grains between points in southern territory.

\*     \*     \*     \*     \*     \*

The section 2 and 3(1) issues are based on the applicability of the proposal, notably the exclusion of movements in private cars. The Commission has long recognized the justification for disparate treatment of private equipment. See, for example, Switching at St. Louis and East St. Louis, 120 I.C.C. 216, 221 (1926).

Other section 2 and 3(1) matters are the result of the possibly overbroad scope of the proposal. However, insufficient evidence is available to warrant suspension on the basis of such assertions. The adverse effects predicted by protestants and the benefits advanced by SFA are speculative. This is an experimental rate increase and there is no way to predict with certainty the overall impact of the proposal.

\*     \*     \*     \*     \*     \*

This is the first proposal filed pursuant to Ex Parte No. 324 regulations. The

Such standards and procedures shall be designed to (a) provide sufficient incentive to shippers to reduce peak-period shipments, through rescheduling and advance planning; (b) generate additional revenues for the railroads; and (c) improve (i) the utilization of the national supply of freight cars, (ii) the movement of goods by rail, (iii) levels of employment by railroads, and (iv) the financial stability of

markets served by railroads. Following the establishment of such standards and procedures, the Commission shall prepare and submit to the Congress annual reports on the implementation of such rates, including recommendations with respect to the need, if any, for additional legislation to facilitate the establishment of such demand-sensitive rates.

complaint sections of the Act protect, to a certain extent, the interests of those who may be adversely affected. Weighing the contentions before us and the clear Congressional purpose to permit experimental ratemaking, we will permit this temporary adjustment to become effective.

*It is ordered,* that the respondent carriers file, with the Secretary of this Commission, reports relating the effect of the schedules in terms of (1) car utilization (filled and unfilled orders by car types); (2) grain movements based on specific commodities and the stations of origin and destination; (3) carloadings by car type and commodity; (4) evidence of diversion; and (5) evidence of shipper rescheduling. * * * This requirement is subject to later refinement or modification by the Commission. Since several protestants raise allegations concerning an alleged disparate treatment between railroad-owned and privately owned equipment, we will, out of caution, direct our Bureau of Investigations and Enforcement and Bureau of Operations to closely monitor this matter.

Seaboard Allied Milling Corporation, *et al.*, on petition to this court on September 14 obtained ex parte temporary stay of the Commission's orders refusing to suspend the operation of the tariff and permitting it to become effective. Another panel of this court, after a hearing on briefs and oral argument, set aside the stay order. A copy of such order not heretofore published is attached hereto as Appendix A.

Thereafter the Commission by order dated September 23, 1977, permitted the carriers to implement its proposed tariff on one day's notice. Such notice was given and the tariff was placed in effect. This court in its order of September 22 states petitioners made a strong showing that this court has jurisdiction to grant the stay but that upon a balancing of equities the temporary stay should be dissolved. The order however provides:

Pending our determination of the merits of the petition for review, intervenor railroads are admonished to maintain such records as will be consistent with the accounting procedures established under 49 U.S.C. § 15, par. (8)(e) to enable prompt determination of overcharges should the contentions of petitioners prevail upon review.

The Commission's order of September 23 contains substantially the same provision. Such directions were authorized by § 15(8)(e) and by general equitable principles. Such provisions at least strongly tend to indicate that uncertainty in the lawfulness of the proposed tariff exists.

Petitioners claim the Commission erred in not suspending the operation of the proposed tariff on the basis that it was patently in violation of statutory law. The United States, the Interstate Commerce Commission and the railroads all contend that the Commission has a large degree of discretion in suspension matters and that its action in refusing to suspend the operation of the tariff is not subject to judicial review. Respectful authority supports this contention. *United States v. SCRAP*, 412 U.S. 669, 698, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Arrow Transportation Co. v. Southern Railway Co.,* 372 U.S. 658, 667–68, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). In any event, the period covered by the seasonal tariff has long since expired and the resolution of the jurisdiction to review the suspension order has no significant impact on the result of this case. The protective orders of this court and the Commission protect the rights of the petitioners in event the court finds it has a right to review the Commission's refusal to continue the investigation of the validity of the proposed tariff and finds it to be unlawful.

The critical issue in this case is whether jurisdiction exists to review the propriety of the Commission's termination of its investigation of the lawfulness of the proposed tariff. The United States and the petitioners vigorously assert jurisdiction exists.

They contend that the proposed seasonal rate violates the long-and-short haul rate differential set forth in 49 U.S.C. § 4(1). Such section prohibits common carriers from receiving any greater compensation for transportation for a shorter haul than for a long distance haul over the same line or route in the same direction, or to charge greater compensation as a through rate than the aggregate of the intermediate rates. The statute also provides that the carrier upon application and investigation by the Commission in special cases may be authorized by the Commission to charge less for longer than for shorter distances. No application under the foregoing provision has been made, investigated or considered by the Commission.

The Commission in its order above quoted acknowledges that the protestants have cited instances in support of their contention that the proposed tariff violates § 4(1). Protestants also urge that if more time were available additional violations could be found. Violation of the long-and-short haul provisions are denied by the railroads upon whom the burden rests to support the lawfulness of the tariff. The Commission in its order summarily holds that the evidence does not support § 4 violations to a sufficient extent to warrant suspension of the tariff and finds it unnecessary to further investigate the asserted violations. The Commission goes on to say: "However, respondents are admonished to take prompt action to remove violations of the long-and-short haul provision of Section 4(1) of the Act, if any. . . . " Reliance is also placed on the railroads' promise to avoid § 4 violations. This may be difficult to do with the approved tariff requiring payment of charges in accordance with the tariff provisions approved by the Commission. As heretofore stated, we are not reviewing the Commission's discretion to suspend the tariff.

We accept the view of the United States and the protestants that the suspension powers and investigation powers are separate and distinct. The Commission has statutory authority to investigate the lawfulness of its tariffs. It is not contended that § 15(17) modifies or repeals the requirements of § 4(1). In any event, we hold that it does not.

The factors which prompted the Supreme Court in *Arrow Transportation Co. v. Southern Railway Co., supra,* to hold suspension orders not reviewable are not applicable to decisions of the Commission to refuse to make or to terminate an investigation of the lawfulness of a proposed tariff. The United States in support of its view at pp. 15 and 16 of its brief states:

In contrast to the suspension power, Congress granted the Commission the power to investigate *proposed* rates because it viewed the power to investigate only *existing* rates as an inadequate remedy for the protection of shippers and the public. It authorized the Commission to order an investigation into proposed rates upon complaint by an interested party or upon its own initiative. *See* 49 U.S.C. 15(8)(a). The Commission's authority to investigate proposed rates before their effective dates was consciously made coextensive with its prior-existing power to investigate existing rates which were the subject of section 13(1) complaints. [I Sharfman, *The Interstate Commerce Commission* at 58 (1931)]. The Congressional purpose underlying sections 13(1) and 15(8) is the same, insofar as both authorize the Commission to investigate and make orders with respect to the legality of rates, differing only as to when the Commission commences its investigation. For purposes of judicial review, it is unreasonable to assume that Congress intended the Commission's power to investigate proposed rates to be a matter committed to the sole discretion of the agency. See S.Rep. No. 355, [61st Cong., 2d Sess.], at pages 8–9.

We note that the Supreme Court has not passed on the reviewability of the issues before us. *Aberdeen & Rockfish R. Co. v.*

*SCRAP*, 422 U.S. 289, 317–18, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975).

■ A finding that the court has jurisdiction to review the Commission's determination not to pursue its investigation is consistent with finding that the review of a similar action by the Commission is available. *Alton Railroad Co. v. United States*, 287 U.S. 229, 236–37, 53 S.Ct. 124, 77 L.Ed. 275 (1932). Likewise, the Commission's decision to terminate investigation commenced pursuant to § 13a(1), involving the discontinuance of service by a carrier, has been held to be reviewable. *City of Chicago v. United States*, 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969). In footnote 5 of that case at p. 166, 90 S.Ct. at p. 312, the court states:

> The Administrative Procedure Act, 5 U.S.C. § 551(6) (1964 ed., Supp. IV), defines "order" as including a "negative" form of "a final disposition" by agency action. And that kind of "order" is subject to judicial review. 5 U.S.C. §§ 551(13), 701(b)(2), 702 (1964 ed., Supp. IV).
>
> When carriers file new rates, the Commission has authority on its own initiative or on complaint to make an investigation either with or without suspension of the new rates. 49 U.S.C. § 15(7). Where the Commission finds the proposed rates lawful, its order reads: "[T]he investigation proceedings [are] discontinued." See *Eastern Central Motor Carriers Assn. v. Baltimore & O.R. Co.*, 314 I.C.C. 5, 51. Such orders are reviewable. *Cooper-Jarrett, Inc. v. United States*, D. C., 226 F.Supp. 318, aff'd, 379 U.S. 6, 85 S.Ct. 49, 13 L.Ed.2d 21.

We recognize the right of review in rate cases is a narrow one. *See Atchison, Topeka & Santa Fe R. Co. v. Wichita Board of Trade*, 412 U.S. 800, 806–07, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973) (plurality opinion); *North Dakota State Wheat Commission v. United States*, 565 F.2d 621 (8th Cir. 1977). The Commission's expertise in the field must be given considerable respect. The unlimited discretion would appear to have more weight in resolving economic issues. Significant policy reasons exist for review of the lawfulness of the proposed rate under the facts of this case. If the Commission's decision not to pursue an investigation of the factual background relevant to the legality issue is unreviewable, the protestants only resort would be to file a § 13(1) complaint once the rates became effective. The Commission has apparently limited its authority in such cases to the issue of whether the rate as applied is discriminatorily prejudicial or illegal. Moreover, in § 13(1) proceedings the burden is on the party challenging the lawfulness of the rate. In a § 15(8) proceeding the burden is on the railroad to establish the lawfulness and the reasonableness of the tariff.

■ It is the duty of the Commission in rate proceedings to investigate substantial issues relating to the lawfulness of the proposed tariff. While no formal hearing on the lawfulness issue was ordered by the Commission, the protestants' basis for declaring the tariff violated applicable statutes was clearly raised before the Commission. The Commission's order refusing to pursue the investigation reflects that it recognized and considered the protestants' claims. We believe that the Commission was derelict in its responsibility in refusing to pursue the investigation of the substantial charges of illegality which were made. Its order in effect made the proposed tariff operative and placed it in effect. Its order reflects no supporting findings or a reasonable basis for so doing, at least with respect to the charged § 4(1) violations. Its order in effect is a final order on the § 4(1) issue.

The Commission and the railroads urge that *Asphalt Roofing Manufacturers Association v. Interstate Commerce Commission*, 186 U.S.App.D.C. 1, 567 F.2d 994 (D.C.Cir. 1977), supports their position that the Commission's termination of its investigation is not a reviewable order.

We agree with the statement in that opinion reading:

> The Supreme Court in *Aberdeen & Rockfish R.R. v. SCRAP*, 422 U.S. 289, 314–18 [95 S.Ct. 2336, 45 L.Ed.2d 191] (1975) (SCRAP II) . . . expressly declined to resolve the issue whether an ICC "decision that a *general* rate increase is justified by reason of revenue need is a final decision ripe for immediate review . . . absent exhaustion of § 13 remedies . . . ." 422 U.S. at 317–18, n.18 95 S.Ct. at 2354 (emphasis by the Court). The Court in *SCRAP II* did, however, hold that the Commission's conclusion at the close of a general revenue proceeding "that it need give no further *consideration* to environmental factors [under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–35 (1970)], *in that proceeding*" was a final decision subject to judicial review, 422 U.S. at 318–19, 95 S.Ct. 2336 (emphasis by the Court.)

*Id.* at 8, 567 F.2d at 1001. We disagree with the conclusion that the Commission decisions not to pursue an investigation are under all circumstances not final decisions subject to judicial review and with the reasoning upon which such conclusion is based. *Id.* at 8, 567 F.2d at 1001.

The substantial violations of specific statutory requirements here alleged, apart from the economic issues, are matters that should be fully investigated and decided with appropriate findings and conclusions. Failing so to do places the proposed tariffs in effect and is equivalent to a finding of lawfulness of the tariffs.

There is as great a justification for treating the Commission's order terminating the investigation as a final order subject to judicial review as there is for the holding in *Aberdeen & Rockfish R. Co. v. SCRAP, supra* 422 U.S. at 318–19, 95 S.Ct. 2336, that the Commission's determination in the general revenue proceeding to give no further consideration to environmental factors in that proceeding is a final order subject to

judicial review. As stated by the Court: "[W]hatever consideration of environmental matters is necessary or proper at the general revenue proceeding is over and done with when that proceeding terminates." A similar reasoning should apply when substantial charges of patent illegality in the tariffs are made.

We believe that the purposes of judicial and administrative efficiency will be best served by permitting review of the termination by the Commission of its investigation. Such procedure would eliminate the necessity of consideration of numerous potential § 13(1) complaints by the Commission and the court. As above noted, the burden in a § 13(1) proceeding would be on the complainants to show that the tariff was unlawful and that they were adversely affected by it.

The Commission in its brief, at pp. 11 and 12, states: "While it may be true that patently illegal tariff proposals may be rejected, we strongly assert that this is not the posture in the present case." We believe a substantial issue of patent illegality has been presented. The validity of such complaint was not determined by an adequate investigation. We express no view on whether the proposed tariff violates the short-and-long haul provision of § 4(1) but do hold that the charge has sufficient substance to require the Commission to investigate charges of such violation and to make appropriate findings and conclusions on the basis of such an investigation.

What has heretofore been said is sufficient in itself to require a vacation of the Commission's premature termination of its investigation of the § 4(1) charge and a remand of such issue to the Commission for an adequate investigation and findings based upon the investigation. A remand of such issue to the Commission for an adequate investigation and findings based thereon should be made.

We also have considerable doubt of the adequacy of the investigation with respect

to the rate discrimination charges arising from the exemption of cars not owned by the railroads. Compensation for use of nonowned cars is prescribed by tariffs and the probability exists that the tariff compensation for the use of non-railroad cars has been paid. Thus a serious question arises whether illegal preference is given owners or lessees of privately owned cars to the detriment of shippers using railroad owned cars and whether by reason thereof producers and purchasers of grains shipped in railroad cars have been prejudiced by such an arrangement.

We hold that under the peculiar circumstances of this case charging patent illegality of the proposed tariff that the Commission's determination not to adequately investigate the charges should be vacated.

This case is remanded to the Commission with directions to investigate the charges of patent illegality and to make findings and determinations based upon such investigation.

The Commission is directed to promptly hold hearings to investigate the charges of patent illegality and to make detailed findings and conclusions with respect thereto.

If the Commission after investigation determines that the tariff is unlawful, it shall make appropriate provision for refund of increased charges collected under the tariff.

The Commission's order terminating its investigation of patent illegality charges is vacated and these cases are remanded to the Commission for further proceedings consistent with the views expressed in this opinion.

## APPENDIX A

United States Court of Appeals
for the Eighth Circuit

No. 77–1729

Seaboard Allied Milling Corp.,
Archer Daniels Midland Company,
ADM Milling Co., Conagra, Inc.,
and Dixie Portland Flour Mills,
Inc.,

Petitioners,

v.

Interstate Commerce Commission
and United States of America,

Respondents.

Petition for Review of
an Order of the Interstate
Commerce Commission.

Filed: September 22, 1977

Before MATTHES, Senior Circuit Judge, WEBSTER and HENLEY, Circuit Judges.

## ORDER

On September 14, 1977 petitioners filed a petition for review of the Order of the Interstate Commerce Commission entered on September 14, 1977, in Suspension and Fourth Section Board Case No. 67123, and Office of Proceedings Docket No. 36663. Petitioners simultaneously filed a motion for stay or other injunctive relief with respect to said order. On September 14 we granted a temporary stay and granted respondents until September 21, 1977 to respond.

In the interim several motions have been filed on behalf of various interested parties for leave to intervene. All pending motions to intervene are hereby granted.

In the order of the Interstate Commerce Commission sought to be reviewed, the Commission refused to suspend the September 15, 1977 effective date of proposed rate tariffs published by the Southern Freight Association increasing freight rates on railroad owned cars approximately 20% from September 15, 1977 to December 15, 1977. These so called demand-sensitive rates were based on § 202(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 15(17). In opposing the tariffs and in support of suspension thereof by the Commission, petitioners asserted, *inter alia*, that the new rates violated the longhaul-shorthaul provisions of 49 U.S.C. § 4(1), as well as §§ 1(5), 1(6), 1(11) to 3(1) and 15(17) of the Interstate Commerce Act. These contentions were rejected by the Commission.

Respondents contend that this Court is without jurisdiction to grant the stay, relying primarily upon *Arrow Transportation Co. v. Southern Ry.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). Petitioners contend that the patent illegality of the tariffs brings this case within an exception to *Arrow Transportation Co. v. Southern Ry., supra,* at 671, n. 22, 83 S.Ct. 984 and that the stay is necessary to protect them from irreparable injury pending this Court's review of the merits.

We have reviewed the briefs and papers on file and have heard extensive oral argument by the parties, and intervenors this date. Considering the circumstances by which this case comes to us, it appears to be *sui generis.* Petitioners have made a strong showing that this Court has jurisdiction to enter the stay. After balancing the equities under the traditional tests of *Virginia Petroleum Jobbers Assn. v. F. P. C.,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), however, we are satisfied that the temporary stay heretofore granted should be and it is hereby dissolved.

Pending our determination of the merits of the petition for review, intervenor railroads are admonished to maintain such records as will be consistent with the accounting procedures established under 49 U.S.C. § 15, par. (8)(e) to enable prompt determination of overcharges should the contentions of petitioners prevail upon review.