NEW YORK DOCK RAILWAY and Brooklyn Eastern District Terminal, Petitioners,

and

The City of New York, Petitioner-Intervenor,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents,

and

Consolidated Rail Corporation, Respondent-Intervenor.

No. 261, Docket 82–4092.

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1982.

Decided Dec. 20, 1982.

Walter M. King, Jr., Washington, D.C. (Malcolm B. Choset, Wrenn & Schmid, Brooklyn, N.Y., Christine A. Pasquariello, Brooklyn, N.Y., of counsel), for petitioners.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City (Stephen J. McGrath, Ellen B. Fishman, New York City, of counsel), filed a brief for petitioner-intervenor.

H. Glenn Scammel, Atty., I.C.C., Washington, D.C. (William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Kenneth P. Kolson, Attys., Dept. of Justice, John Broadley, Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, I.C.C., Washington, D.C., of counsel), for respondents.

John A. Daily, Philadelphia, Pa., for respondent-intervenor.

Before MOORE[*], CARDAMONE and PRATT, Circuit Judges.

PER CURIAM:

New York Dock Railway (NYD), Brooklyn Eastern District Terminal (BEDT), and the City of New York (The City) petition this Court for review of an order of the Interstate Commerce Commission (ICC) dated April 13, 1982. The petition is denied for the reasons which follow.

In July 1981 Consolidated Rail Corporation (Conrail) filed with the ICC a "tariff" stating that effective August 15, 1981 it was cancelling certain existing joint-line rates [1] and adopting new rates. The cancelled joint rates included those applicable to grain shipments into the City of New York via NYD and BEDT. By decision dated August 14, 1981 the ICC's Suspension Board (the Board) declined to suspend Conrail's rate changes, thus permitting the old rates to be cancelled and the new substituted rates to become effective. The Board did, however, order Conrail's joint rate cancellation placed under investigation for possible unlawfulness.

During the course of the investigation several small "Class III" carriers, including NYD and BEDT, challenged the propriety of the joint rate cancellation under 49 U.S.C. §§ 10705a(i), (j), (k); 10704(e); 10711(4) & 10741(b), (f)(5). In a decision dated April 13, 1982 the ICC dropped its investigation of these petitioners' claims and made certain findings as follows:

> We have carefully considered all the evidence and arguments submitted, but are unable to reach a majority decision. Accordingly, no further discussion of the issues can be made. 49 U.S.C. 10707(b)(i)(B) provides that, if the Commission does not reach a final decision within the applicable time period, the rate, if already in effect at the end of that time period, remains in effect.

*Restructured Rates on Grain and Grain Products, Conrail,* 365 I.C.C. 635, 667–68 (1982). The Board's inability to reach a decision regarding NYD and BEDT's objections resulted from a deadlock between the Board's four voting members; a fifth member of the Board abstained. NYD, BEDT, and the City, as intervenor, now petition this Court for review of the ICC's decision

---

[*] Judge Leonard P. Moore participated in the oral argument in this case and voted before his death on Tuesday, December 7, 1982 to dispose of the case in the manner set forth in this opinion. He was unable to concur in the opinion itself due to his last illness.

1. A joint-line rate is one charged by two or more railroads together to carry a single shipment over a given route, with each railroad carrying the shipment part of the way.

to discontinue its investigation of petitioners' charges.

 Because of the anomalous circumstances of this case (i.e., the tie vote), we conclude that the petition for review must be denied for want of subject matter jurisdiction. Except as otherwise provided by Congress, the courts of appeals have exclusive jurisdiction to determine the validity of *final* orders of the ICC. 28 U.S.C. §§ 2321(a), 2342(5) (1976 & Supp. IV 1980). An ICC decision to approve or disapprove a set of rates if made on the merits is, of course, a judicially reviewable final decision. *See Southern Railway Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 452, 99 S.Ct. 2388, 2393, 60 L.Ed.2d 1017 (1979). A decision not to investigate a proposed rate change is not a reviewable final order. *See id.* Similarly, a decision to terminate an existing investigation is a non-final order unless the decision to discontinue results from a determination on the merits of the case. *See City of Chicago v. United States,* 396 U.S. 162, 166, 90 S.Ct. 309, 311, 24 L.Ed.2d 340 (1969). Since a majority of the ICC failed to agree on the merits of petitioners' objections, we have no final decision of the Commission to review. The case upon which petitioners base their argument that the Board's decision was final, *City of Chicago,* is inapposite. In *City of Chicago* the ICC actually reached a conclusion on the merits before discontinuing its investigation. *Id.* In our view the merits of this case are better left to expertise of the ICC, which expertise petitioners can readily invoke through motion for reargument before that administrative body. In fact, counsel for the ICC stated at oral argument that not only is reconsideration especially appropriate in this case, but that such reconsideration is likely to be granted by the newly-constituted Commission. Although the availability of agency reconsideration will not undercut an otherwise *final* order, *see* 5 U.S.C. § 704 (1976), the "finality" requirement should be interpreted pragmatically, *see Environmental Defense Fund, Inc. v. Johnson,* 629 F.2d 239, (2d Cir.1980); *see also Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Viewing the unusual procedural posture of this case in the practical light, we conclude that the Commission's April 13 decision was not a final decision that vests this Court with jurisdiction.

Accordingly, the petition is denied.