**STATE OF MICHIGAN DEPARTMENT OF TRANSPORTATION, Petitioner,**

and

**United Transportation Union, et al., Intervening Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

and

**Chesapeake & Ohio Railway Co., Intervening Respondent.**

No. 81–3354.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1982.

Decided Jan. 21, 1983.

Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., James J. Stropkai, Fritz R. Kahn (argued), Ellen A. Efros, John R. Long, Verner, Liipfert, Bernhard & McPherson, Washington, D.C., for petitioner.

Richard A. Allen, Cecelia Higgins (argued), I.C.C., William French Smith, Atty. Gen. of U.S., John J. Powers, III, Kenneth P. Kolson, Dept. of Justice, Washington, D.C., for respondents.

James F. Schouman (argued), Shouman & Tindall, Dearborn, Mich., Alan M. Charlton, for United Transp. Union, Nat. Maritime Union, City of Ludington, Mich. and City of Manitowoc, Wis.

Albert W. Laisy, Cleveland, Ohio (argued), James O'Connell, Cincinnati, Ohio, for Chesapeake and Ohio R. Co.

Before KENNEDY and WELLFORD, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This case is before the court on a petition to review a decision of the Interstate Commerce Commission finding that the public convenience and necessity permit abandonment of a railroad car ferry route across Lake Michigan, operated by the Chesapeake & Ohio Railway Co. (C & O). The decision of the Commission is Docket No. AB–18 (Sub. No. 36)F, dated September 9, 1981.

Reference is made to the decisions of the Commission and its Administrative Law Judge for a detailed recitation of pertinent facts.

■ We conclude that the decision of the Commission is supported by substantial evidence. Accordingly, we dismiss the petition and intervening petitions to review.

## I

In 1975, C & O applied to the Commission for authority, pursuant to 49 U.S.C. § 10903, to abandon all three of its car ferry service routes across Lake Michigan. The ferries carried rail cars, passengers (mainly tourists) and the passengers' automobiles. The Commission prepared an extensive environmental impact statement and conducted hearings on the application. Many of the parties entered into a stipulated agreement narrowing the application to the route between Ludington, Michigan, and Milwaukee, Wisconsin. In a decision announced February 20, 1980, Docket No. AB–18 (Sub. No. 21), the Commission held that the public convenience and necessity warranted abandonment of that route. Petitions to review were filed in this court under the style of *City of Milwaukee v. Interstate Commerce Commission,* Nos. 80–3019 and 80–3085.

This court found the petitions in that proceeding to be without merit and on June 28, 1981, affirmed the decision of the Commission in an unpublished order noted in 663 F.2d 1070 (6th Cir.1981). The unpublished order of this court in that case is made an appendix to this opinion.

## II

The present case involves the reapplication of C & O to abandon its Lake Michigan car ferry route between Ludington, Michigan, and Manitowoc, Wisconsin, and 3.56 miles of rail yard, terminal tract and associated structures used in the ferry operation. This route originally was included in the 1975 application but later was excluded from that application by stipulation of the parties. (See appendix hereto.)

The Administrative Law Judge rendered a comprehensive opinion granting the abandonment. The ALJ found that C & O suffered substantial losses in recent years on the Ludington-Manitowoc route and that there would be adequate alternate means of transportation for both the passengers and

freight shippers using the ferry route. The ALJ determined that the burden of the ferry service on interstate commerce outweighed the benefits of the line to local communities.

On administrative appeal, the Commission agreed with the decision of its Administrative Law Judge. The Commission found that C & O lost over $400,000 on the route during 1979–80 plus an additional loss of over $200,000 in "opportunity cost."[1] The Commission further found that the continued operation of the ferry route would be a substantial burden on C & O and on interstate commerce, and that the loss of revenue in jobs, tourists and related industries would not be significant because the availability of other ferries that would continue to serve Manitowoc and Ludington.

The Commission denied a motion to stay its decision pending review. On December 11, 1981, a panel of this court composed of Judges Weick, Martin and Jones denied the motion of the petitioner and intervening petitioners to stay the decision of the Commission pending review by this court. The ferry service has been abandoned since January 11, 1982.

### III

The petitioners and intervening petitioners assert that the decision was rendered by an unlawfully constituted Interstate Commerce Commission. 49 U.S.C. § 10301 provides that the Commission is to be composed of eleven members appointed by the President, by and with the advice and consent of the Senate, and that no more than six members may be appointed from the same political party. Because of vacancies, the Commission consisted of only four members—three Republicans and one Democrat—when its decision was rendered in the present case. This objection of petitioners is without merit. 49 U.S.C. § 10301 expressly provides that: "A vacancy in the membership of the Commission does not impair the rights of the remaining members to exercise all the powers of the Commission." Under this statute vacancies did not affect the right of the remaining members to render a decision in the present case. *Assure Competitive Transportation, Inc. v. United States,* 629 F.2d 467, 472–75 (7th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981).

### IV

Intervening petitioners contend that the Commission had no authority to permit abandonment of the line under 49 U.S.C. § 10903(a) and that the only way the Commission could allow abandonment would be to proceed under 49 U.S.C. § 10908. The intervening petitioners rely upon a Michigan statute, enacted in 1883.[2] They assert that the Commission lacked jurisdiction under 49 U.S.C. § 10903(a) to authorize abandonment of the car ferry route and that the exclusive procedure was prescribed by § 10908. They aver that the Commission's assertion of jurisdiction denied them the equal protection of the law.

We conclude that this contention is completely without merit. The Commission has jurisdiction under 49 U.S.C. § 10903 to authorize a rail carrier to "abandon any part of its railroad lines." The Commission correctly held that it had jurisdiction to authorize C & O to abandon the car ferry route involved in this proceeding. Section

---

1. "Opportunity cost" was the amount found to have been lost by C & O by keeping assets tied up in the ferry rather than investing them elsewhere.

2. M.C.L.A. § 464.45. **Vessels; power of railroad to operate, loan in aid of construction** Sec. 45. Any railroad company in this state having either, or both of its termini at the shore of 1 of the navigable lakes or streams through which the boundary line between this state and other states, or the dominion of Canada passes, where physical connection between its road and other railroads without the state is impracticable by reason of such intervening navigable body of water, may own and operate on such body of water such number of steamboats, barges, or vessels as the traffic of passengers and freight between it and such other railroads shall render necessary, or it may loan money to any person or corporation in aid of the construction of steamboats, barges, or other vessels to be so operated.

10908(a)(2) allows carriers to discontinue car ferry service notwithstanding the fact that a proposed abandonment of service "is subject to the law of a State ..." Petitioner Michigan Department of Transportation does not allege State jurisdiction. In any event "[S]tate efforts to regulate commerce must fall when they conflict with or interfere with federal authority over the same activity." *Chicago & Northwestern Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 319, 101 S.Ct. 1124, 1131, 67 L.Ed.2d 258 (1981). The Commission has "exclusive and plenary" authority to regulate abandonment of service. *Chicago & Northwestern Transportation Co. v. KALO, supra,* 450 U.S. at 321, 101 S.Ct. at 1132; *City of Chicago v. United States,* 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969).

## V

Both the petitioner and intervening petitioners assert that the Commission violated the National Environmental Policy Act of 1969, 42 U.S.C. § 4332(2)(C) (NEPA) by not preparing a completely up-to-date environmental impact statement. The record shows that the Commission relied in part upon the comprehensive environmental impact statement prepared for its earlier proceeding initiated in 1975 (see appendix to this opinion). In addition, the Commission prepared an up-to-date environmental assessment that examined the socio-economic effects of abandoning the route, the alternate transportation available, and the effects on air quality, water quality, endangered species, noise levels, historic properties and energy consumption. The Commission concluded that the abandonment of the Ludington-Manitowoc ferry route was not a major federal action requiring a new environmental impact statement. It also concluded that the abandonment of the ferry route could have some beneficial effects, including a slight improvement in air quality in the communities surrounding the ferry ports; and that the abandonment would have no material effect on the ecology, water quality, and noise levels of Lake Michigan and would not affect any endangered species or properties of historic value.

The determination of whether the Commission should have prepared a completely new and up-to-date environmental impact statement under these circumstances was a matter within the discretion of the Commission. Absent arbitrary action, this discretion will not be disturbed. *See Kleppe v. Sierra Club,* 427 U.S. 390, 412, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976); *see also* 49 C.F.R. § 1108.6(b)(1).

It is to be emphasized that at the time the 1975 action was initiated, C & O contemplated discontinuance of *all* service. More than 18 months were devoted at that time to collecting data for the environmental impact statement. The same area was involved again in the present case, limited to the proposed discontinuance of only one line of rail service. We conclude that the Commission did not abuse its discretion in not preparing a new up-to-date environmental impact statement under the facts of this case.

Upon consideration of the entire record, we hold that the decision of the Commission is supported by substantial evidence.

The petition and intervening petitions to review are dismissed. Each party will bear its own costs in this court.

## APPENDIX

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CITY OF MILWAUKEE, et al.
Petitioners,

v.

INTERSTATE COMMERCE COMMISSION AND UNITED STATES OF AMERICA,
Respondents.

ORDER

[Filed July 28, 1981]

Before KEITH and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

The petitioners seek review of a decision of the Interstate Commerce Commission that the public convenience and necessity permitted abandonment of a car ferry operated by the Chesapeake & Ohio Railway Co.

across Lake Michigan between Ludington, Michigan and Milwaukee, Wisconsin.

C & O filed its petition for abandonment in 1975, seeking to abandon its car ferry operations between Ludington, Michigan and Kewaunee, Manitowoc, and Milwaukee, Wisconsin. C & O was then operating vessels on all three of these routes, with the number of trips dictated by the volume of traffic.

Various state and local governments, public officials, shippers associations, individual shippers and receivers of freight opposed the abandonment. In one of the most voluminous proceedings in ICC history, the administrative law judge heard sixty-three days of testimony and compiled a record of over 10,000 pages.

After the close of the Commission's proceedings, C & O entered into a stipulation agreement with a number of protestants, including the State of Wisconsin, the State of Michigan, other state agencies, various shippers and associations. The parties to the stipulation agreement agreed to narrow the scope of the abandonment application to the Ludington-Milwaukee route, thereby preserving service from Ludington to Kewaunee and Manitowoc. Those parties also agreed to abandon their opposition to the termination of the Ludington-Milwaukee route; to refrain from making any efforts to abandon the route to Kewaunee for at least five years; and to permit reopening of the Manitowoc abandonment application after January, 1980. (Later, the State of Michigan withdrew its support of the stipulation.) Subsequently, this stipulation was received into the record.

In a 184 page decision, the ALJ weighed the benefits of continued service to particular communities against the potential burdens on other commerce, and concluded that the public interest and necessity permitted the abandonment of car ferry operations between Ludington and Milwaukee.

The ALJ found that C & O had incurred net losses in excess of $4 million in 1975 and $3.8 million in 1979 as a result of providing car ferry service. He also found that the abandonment would not deprive any ship-per of rail service, and that there were alternative routings available to users of the Ludington-Milwaukee service, i.e., through Chicago.

The ALJ also considered the effects on Milwaukee as opposed to Kewaunee and Manitowoc and found that Milwaukee would suffer least because of its proximity to Chicago. Although the ALJ did not accept the stipulation agreement as controlling, he did find it to be consistent with the evidence developed in the record. Upon review, the Commission held that the ALJ had given proper weight to the stipulation, properly assessed the impact of the abandonment, and therefore upheld the decision of the ALJ permitting abandonment. The ICC reopened the proceeding, however, for consideration of the energy impact of the abandonment. The Commission concluded that the abandonment would not significantly affect energy consumption or the quality of the environment.

Our review of the record convinces us that the ICC's decision to permit C & O to abandon the car ferry service was a reasonable exercise of the agency's discretion. Ample evidence, not seriously controverted, exists to support its conclusion that the detrimental effects of abandonment were clearly outweighed by the burdens on interstate commerce that continued operation of the ferry would entail. This finding was not a result of a wholesale acceptance of the stipulation agreement entered into between the majority of the parties involved, but rather is a reflection of the evidence contained in the record. That evidence reveals that C & O had experienced substantial losses on Ludington-Milwaukee route, that it had acted reasonably in attempting to cut its losses, that the adverse effects on the City of Milwaukee would be minimal compared to the benefits which would accrue from termination of the route, and that the ICC had adequately considered the environmental consequences of abandonment.

Accordingly, the petitions for review are dismissed as being without merit.

ENTERED BY ORDER OF THE COURT
/s/ JOHN P. HEHMAN